BEFORE THE THIRD DIVISION, MAY 17, 1944

**No. 49414.**—Protest 85979–K of Baumgarten Bros.    (San Francisco).

CLINE, Judge:    This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on certain frozen bull meat with the bones removed, upon which duty was assessed at 6 cents per pound under the provision for "beef and veal, fresh, chilled, or frozen," in paragraph 701, Tariff Act of 1930.    The plaintiff claims that the commodity is dutiable at 3 cents per pound, but not less than 20 percent ad valorem, under the following provision in paragraph 706, as modified by the trade agreement with Argentina, T. D. 50504:

Meats, prepared or preserved, not specially provided for (except meat pastes other than liver pastes, packed in air-tight containers weighing with their contents not more than 3 ounces each).

The record shows that the imported merchandise consists of bull meat; that, after the animals were slaughtered, the sinews, tendons, fat, suet, blood clots, kidneys, heads, hoofs, and bones were removed by skilled workmen and the remaining portions of the animals were cut into pieces and packed in packages about 100 pounds in weight, covered with cheesecloth. and frozen hard; that after importation the meat is ground in its frozen condition for use in making bologna sausages and frankfurters, and the instant shipment was used for such purposes in this country.    The record shows also that bull meat is so processed and used in the principal meat producing sections of the United States.

This evidence proves conclusively that the merchandise herein involved comes within the provision for "meats,    *    *    *    prepared" in paragraph 706, as that provision has been construed by the courts.

Judicial decisions holding that bull meat cut in pieces for use in making sausages, and also beef and calf livers, were not classifiable as "fresh beef" under paragraph 701, Tariff Act of 1922, were called to the attention of Congress in a pamphlet prepared for the use of the Committee on Ways and Means of the House of Representatives entitled "Memorandum of Court Decisions Affecting Tariff Act of 1922."    It was suggested in that pamphlet that if Congress intended such pieces of bull meat to be used in the manufacture of sausages should be classified as fresh beef, paragraph 701, Tariff Act of 1922, should be amended by adding the words *"including beef for sausage meat, not preserved, except preservation for transportation only"* after the words "fresh beef and veal."    Congress did not adopt the proposed amendment in enacting the Tariff Act of 1930.    The provision was changed to read "beef and veal, fresh, chilled, or frozen" but this change does not seem to suggest that the amendment was intended to change the result in the judicial decisions.

The record in the instant case contains the testimony of two well-qualified witnesses with reference to the commercial meaning of the phrase "beef,    *    *    *    fresh, chilled or frozen."    Witness Heuck testified as follows on this point:

. Q. Are you familiar with dressed beef carcasses in classes known as fresh, chilled, and frozen?—A. Yes.

Q. What does "fresh" mean?—A. "Fresh," the way it is understood in the trade as against cured but fresh meat, and cured, fresh chilled and fresh frozen, it can be fresh meat frozen or fresh meat chilled.

Q. I did not quite understand what you said about cured.—A. Cured is a process against fresh, that is, when something is added to it. Fresh meat is fresh meat, and cured is cured, but cured can be fresh meat or fresh frozen. There is a difference in temperature.

Q. What does "chilled" mean?—A. It is refrigerated around 34 or 35 degrees; and frozen would be in a solid state after it is chilled.

Q. These meanings that you say in the terms of "fresh," "chilled," and "frozen," are they well known in the trade?—A. Yes.

Q. In the beef trade?—A. Yes, they are well known.

Q. Are they used in transactions between wholesalers, or between wholesalers and retailers, or wholesalers and manufacturers?—A. Yes, they are.

Q. Has that been the same throughout your business experience?—A. Yes, I never knew any different thing.

\* \* \* \* \* \* \*

Q. Did they use the terms, these trade terms, in the same sense that you are familiar with and that you just testified to?—A. Yes.

\* \* \* \* \* \* \*

Q. Do these terms include dressed meat that has been boned, fresh, chilled, or frozen?—A. Yes.

Q. I do not think you understood the question. Do the terms fresh beef, chilled beef, or frozen beef include frozen boneless beef?—A. Yes, fresh would be fresh boneless beef, yes, fresh boneless beef, frozen beef or fresh chilled beef.

Q. When you are referring to boneless beef would you use the word boneless?—A. Yes.

Q. Is that universal, in your experience?—A. Yes.

\* \* \* \* \* \* \*

Q. Would boneless beef be a good delivery in the meat trade for something ordered as fresh, chilled or frozen beef without any other words?—A. No.

Q. If an order was given for frozen beef what would you understand was meant?

\* \* \* \* \* \* \*

A. Beef—frozen beef would be whole beef.

Q. Could be what?—A. Carcass beef.

Q. Do you mean by that that a beef had been merely dressed?—A. Just dressed.

Q. Now, in your experience have those commercial distinctions that you have spoken of as existing between boneless beef and beef that has not been advanced beyond the condition of dressed beef—have those distinctions been uniform, definite, and general throughout the trade, so far as you are familiar with them?—A. Yes.

It was agreed between counsel that witness Raymond F. Luce would testify the same as witness Heuck if he were asked the same questions. Mr. Luce was questioned merely as to his commercial experience. These witnesses were not cross-examined by Government counsel and the defendant filed no brief in the case.

A fair review of this uncontradicted commercial evidence indicates that, during the experience of more than 20 years of these witnesses, the terms "fresh beef," "frozen beef," and "chilled beef" were restricted in trade and commerce in the meat producing centers of the United States to beef which had been merely dressed and did not refer to boned beef cut in pieces fit only for making sausages, frankfurters, and other products of a similar nature.

The plaintiff introduced also a copy of a letter from the Commissioner of Customs, dated April 28, 1942 (C. I. E. 364/42), addressed to the customs officers generally and particularly to the comptroller of customs at Chicago, in which letter the Commissioner directed that certain frozen boneless beef hams be classified as prepared meats under paragraph 706, Tariff Act of 1930, as modified by the trade agreement with Argentina, T. D. 50504, following the decision in C. J. Towers & Sons v. United States, 18 C. C. P. A. (Customs) 152, T. D. 44362. This document, which does not appear to have been published in the weekly TREASURY DECISIONS, was admitted in evidence and marked exhibit 1.

Substantially the same issue as that involved herein was passed upon in C. J. Towers & Sons v. United States, supra, and the merchandise was held dutiable under the provision for "meats \* \* \* prepared" in paragraph 706, Tariff Act

of 1922. The reasons assigned by the court for its finding that the merchandise was prepared meat are set forth in the following excerpt from page 155 of the decision:

\* \* \*. The merchandise here, after butchering, has been changed in form and advanced toward sausage by having all sinews, fat, kidneys, tendons, and bones removed by skilled workmen, and then cut into parts which are evidently conveniently shaped and sized to be packed in boxes which form a cake of meat, when frozen, weighing about 100 pounds. Before going to the freezing room, after it is cut and treated as above indicated, 100 pounds of the same is covered with cheesecloth and burlap. After freezing, and before shipment, the box is broken down and removed from the frozen cake.

It is impossible to escape the conclusion that the treatment of this meat is a process of preparation for its eventual use as sausage. The testimony is positive that it is used for no other purpose and is known as bologna bull meat.

The merchandise herein involved has been subjected to substantially the same treatment as that in the case cited and we are of opinion that the ruling in that case is controlling of the issue. We hold that the merchandise is dutiable at 3 cents per pound, but not less than 20 percent ad valorem, under paragraph 706, Tariff Act of 1930, as modified by the trade agreement with Argentina, *supra*. That claim in the protest is sustained. Judgment will be entered in favor of the plaintiff.

### DISSENTING OPINION

EkWALL, Judge: I respectfully dissent from the conclusion reached by the majority.

The plaintiff attempted to prove commercial designation and stated through his counsel:

I am trying to show that the terms "fresh," "chilled," or "frozen" are not used in connection with boneless beef. \* \* \*

The first witness on this point was asked and gave answers to the following questions:

Q. Do these terms include dressed meat that has been boned, fresh, chilled, or frozen?—A. Yes.

Q. I do not think you understand the question. Do the terms fresh beef, chilled beef, or frozen beef include frozen boneless beef?—A. Yes, fresh would be fresh boneless beef, frozen beef or fresh chilled beef.

The fact that the witness stated in answer to a question that boneless beef would not be a good delivery in the meat trade for something ordered as fresh, chilled, or frozen beef without other descriptive words, to my mind does not carry much weight in the matter of commercial designation. In view of the unequivocal testimony above set forth it seems reasonable to conclude that if a customer desired beef that had been boned he would so specify in his order, and would further designate whether he desired such boneless beef to be the kind known as fresh or frozen or chilled. It was agreed by counsel that if the second witness were asked the same questions he would give substantially the same answers.

Even if the qualfications of these witnesses to testify on the question of commercial designation were to be conceded, I do not consider that they have produced satisfactory proof on that point as evidenced by the testimony above quoted.

In regard to the letter of the Commissioner of Customs to customs officers (exhibit 1) it is noted that the only paragraph of the act there involved was paragraph 706. No consideration was given to the specific provision in paragraph 701 for frozen beef. In my view the evidence is insufficient to remove this commodity from the provision for beef, frozen, in that it has not been shown that the meaning of the term "frozen beef" in trade and commerce is such as would exclude this commodity.

The case of *C. J. Tower & Sons* v. *United States*, 18 C. C. P. A. (Customs) 152, T. D. 44362, was decided while the Tariff Act of 1922 was in force. That act contained no provision for frozen beef, and the holding of the court was that the boneless bull beef there involved was dutiable as meats prepared, not specially provided for, rather than as fresh beef or meats preserved. This holding was based upon the reasoning of the opinion in the case of *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783. It will be noted, however, that the court stated, as p. 153:

\* \* \*. Appellant has shown by a fair preponderance of the evidence that fresh beef in the commercial sense is a product entirely different from the frozen boneless bull meat at bar.

However, the court did not have before it there the question whether frozen beef was "a product entirely different from the frozen boneless bull meat at bar," which is the issue here presented for determination.

Furthermore, I think the reasoning in *Stone & Downer Co.* v. *United States* 17 C. C. P. A. (Customs) 34, T. D. 43323, cited in the *Tower* case, *supra*, is inapplicable in the present case, as there the controversy was between dates, fresh or dried, and dates prepared or preserved in any manner, both specific terms. Here we have a comparison between a specific term "frozen beef" and a general term "meat prepared." The court in the *Tower* case, *supra*, held that the commodity there involved was removed from the term "fresh beef" and, being prepared, fell within the general provision for prepared meat. I find the evidence insufficient to remove the instant commodity from the provision for "frozen beef," and the fact that it has been prepared would not of itself remove it from that category and relegate it to the general provision for meat prepared.

For the reasons above set forth I think the *Tower* case, *supra*, cited as controlling in the majority opinion, is distinguishable and that the protest should be overruled.