(C. D. 865)

Geier & Geier, Inc. *v.* United States

United States Customs Court, Third Division

(Decided July 6, 1944)

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States, arising at the port of New York, in which the plaintiff seeks to recover a part of the duty assessed on merchandise imported from Cuba and invoiced as "forequarters chilled beef" and "hindquarters chilled beef." The commodity was classified by the collector as "beef * * * chilled" under paragraph 701 of the Tariff Act of 1930 and assessed at 3 cents per pound under that paragraph as modified by the supplemental trade agreement with Cuba which is published in T. D. 50541 (77 Treas. Dec. 202). The provision in the trade agreement reads as follows:

701. Beef and veal, fresh, chilled, or frozen.  0.03 per lb.

The plaintiff claims that the merchandise should be classified as prepared meat and assessed with duty at 3 cents per pound under paragraph 706 of the Tariff Act of 1930, as modified by the trade agreement with Argentina, T. D. 50504 (77 Treas. Dec. 138), less 20 per centum, which is the differential allowed to products of Cuba under the Cuban Trade Agreement, or at 20 per centum ad valorem less the 20 per centum differential. The provisions in the trade agreement with Argentina under which claim is made reads:

706. Meats, prepared or preserved, not specially provided for (except meat pastes other than liver pastes, packed in air-tight containers weighing with their contents not more than 3 ounces each)—3¢ per lb., but not less than 20% ad valorem.

The plaintiff contends that the imported beef was prepared by the shipper prior to exportation from Cuba sufficiently to remove it from the classification "beef * * * chilled" and bring it within the provision for "meats, prepared."

The only evidence in the record is the testimony of witness Lawrence Leonard Leader taken by deposition in Havana, Cuba. The witness is the manager of plant operations of the exporting company, having had many years of experience in the slaughtering business. He testified that the live steer is killed by means of a hammer and the carcass is then shackled and hoisted to a rail where it is bled; that the carcass is then lowered to the floor where part of the hide, feet, and head are removed; that the legs are cut off at the second joint and sold as separate commercial items; that the hide is removed and sold to the leather industry; that the carcass is again hoisted from the floor for the purpose of removing the intestines, liver, heart, lungs, gall bladder, internal fat, etc., and the remaining part of the hide; that the carcass is split down the spine into two sides and any bruises removed; that the bruises are removed not only to avoid decay but also to improve the appearance of the beef; that the carcass is subjected to further trimming processes; that the sides are then conveyed to the washing rail where they are sprayed with water of a temperature of 147° F. for approximately 3 minutes for the purpose of removing blood or any loose particles of fat which may be clinging to the carcass; that the sides are then shrouded by covering them with a cotton duck material about 3½ yards long by 42 inches wide; that the sides are then put into a cooler for about 48 hours or until an inside temperature of 34° has been obtained; that the purpose of the shrouding operation is to set the fat firmly, giving it a smooth and bleached finish; that after the sides have been sufficiently chilled, the shrouds are removed and the sides cut in two, or quartered; and that they are then wrapped first with a greaseproof paper, then with cheesecloth, and put into white cotton bags, weighed and loaded into cars ready for export.

Under cross-interrogation, the witness testified that the cutting of the carcass into quarters is the usual method used in his trade; that the quarters of beef such as are involved herein are not always sold as forequarters and hindquarters, respectively, in the packing industry; that the involved beef was produced in the usual manner without the application of any special rules; that the main reason for removing the blood from the carcass is to remove the danger of decomposition; that the shroud is placed on the sides of beef to smooth the outer surfaces in order to enhance the appearance; that the carcass is split and cut into quarters for the purpose of making the handling and packing easier; that chuck, cross ribs, shoulder, brisket, shin, and plate are commonly known as cuts of meat located in the forequarters; and rump, porterhouse, shin, navel, top sirloin, and flank are in the hindquarters; that nothing was added to the beef involved herein which would change its flavor or taste, or which brought about any change in the beef as such; that the resultant product herein involved consists of chilled beef.

In an endeavor to show that the merchandise is prepared meat, counsel for the plaintiff cites numerous cases in his brief relating to the scope and meaning of the word "prepared," but, in the view which we take of the case, we are of opinion that it is unnecessary to review them, because there is nothing in the record tending to show that the merchandise involved is not "beef * * * chilled," as it was classified by the collector. It is our opinion that the processes described by the witness appear to be nothing more than what is required to separate the edible portions of the carcasses of the animals.

It is too well settled to require extended citation that Congress speaks in the language of commerce. Where there is no difference between the commercial and the common meanings, the accepted common meaning shall govern. Funk & Wagnalls New Standard Dictionary of the English Language describes "beef" as follows:

beef. 1. The flesh of a slaughtered steer, cow, or other adult bovine animal. * * *.

2. Any adult bovine animal; especially, a steer, cow, or bull fattened, or to be fattened for the butcher.

Since paragraph 701 of the Tariff Act of 1930 provides both for cattle and beef, it is evident that the provision for "beef" was intended to cover the commodity described in definition 1, above. There are illustrations under that definition showing two sides of beef, with the different cuts outlined, such as round, loin, flank, rib, navel, brisket, chuck, shank, etc., all of which are portions of beef in common understanding.

In *C. J. Tower & Sons* v. *United States*, 18 C. C. P. A. (Customs) 152, T. D. 44362, the court held that certain frozen boneless bull meat, used for making sausages, was prepared meat and dutiable under the provision for such merchandise in paragraph 706 of the Tariff Act of 1922 rather than as fresh beef under paragraph 701. The testimony in that case showed that the commodity was not fresh beef within the commercial meaning of that term. The reasons assigned by the court for its finding that the merchandise was prepared meat are set forth in the following excerpt on page 155 of the court's decision:

* * *. The merchandise here, after butchering, has been changed in form and advanced toward sausage by having all sinews, fat, kidneys, tendons, and bones removed by skilled workmen, and then cut into parts which are evidently conveniently shaped and sized to be packed in boxes which form a cake of meat, when frozen, weighing about 100 pounds. Before going to the freezing room, after it is cut and treated as above indicated, 100 pounds of the same is covered with cheesecloth and burlap. After freezing, and before shipment, the box is broken down and removed from the frozen cake.

It is impossible to escape the conclusion that the treatment of this meat is a process of preparation for its eventual use as sausage The testimony is positive that it is used for no other purpose and is known as bologna bull meat.

While the beef in the instant case has been dressed and cut into commercial sizes, it has not been prepared for one use only, which was the condition of the meat in the *Tower* case, *supra.* It is merely chilled beef and is suitable for use as such. No commercial testimony to the contrary was introduced. The provision for "beef * * * chilled" is a more specific designation than that for "meats, prepared" because beef is one of the various kinds of meat. Therefore, we are of opinion that the collector properly classified the merchandise in this case under the provision for "beef * * * chilled." The protest is overruled. Judgment will be rendered in favor of the defendant.