(C. D. 1004)

Rael Schechter *v.* United States

United States Customs Court, Third Division

(Decided May 13, 1946)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The merchandise in question consists of carcasses of beef in forequarters and hindquarters, imported from Cuba. The collector classified the merchandise at 3 cents per pound upon the basis of the net weight under the provisions of paragraph 701 of the Tariff Act of 1930, as modified by the Cuban Trade Agreement, T. D. 50541. The plaintiff claims that duty was assessed on a basis of weight greater than that authorized by the Tariff Act of 1930 or any other provision of law and that duty should have been assessed on the basis of the net landed weight of the flesh content. By way of amendment of the protest it was further claimed that the bones are free of duty under paragraph 1627 of said Tariff Act of 1930.

Paragraph 701, Tariff Act of 1930, as modified by the Cuban Trade Agreement, T. D. 50541, provides as follows:

PAR. 701. Beef and veal, fresh, chilled or frozen 0.03 per lb.

Paragraph 1627 of the free list, Tariff Act of 1930, reads as follows:

PAR. 1627. Bones: Crude, steamed, or ground; bone dust, bone meal, and bone ash; and animal carbon suitable only for fertilizing purposes.

At the trial it was agreed between counsel that the net weight of the shipment, in its imported condition, as returned by the United States weigher, and the allowance for tare made by the customs liquidator, as a basis for calculating the amount of duties, were accurate. It was further agreed that the plaintiff, as consignee of the merchandise, sold it by the piece for the account of the Cuban packer; that the plaintiff, acting as the Cuban packer's agent, distributed the merchandise to the first commercial receivers thereof in the United States, without any change in its form or condition as imported.

The plaintiff testified that the beef he received from Cuba was known as "utility" grade; that the beef in question contained the bones; that in selling it in its imported condition, he invoiced it as

steers, steer hinds, steer fores, or possibly Cuban chilled beef; and that importations of boneless beef from Cuba are billed to his customers in the United States under the description of the various cuts of beef, such as chucks, ribs, rounds, shoulder clods, loins, or whatever the individual cut might be.

Three witnesses, well qualified in the wholesale meat packing business, also testified on behalf of the plaintiff. Their testimony may be summarized as follows: Importations from Cuba were made of boneless as well as carcass beef, and such designations refer to two different commercial entities. Carcass beef was described as that portion remaining after the removal of the hide and the viscera, and would include a hindquarter or a forequarter. In boning, a carcass is broken down into the various cuts of beef and the bones are sold to rendering or fertilizer plants. Grades of choice, prime, and good, would be considered carcass beef because such grades of meat would not be boned. Cuban beef, however, consists of the utility grade or lower, and 95 per centum of the grades known as commercial, cutters, canners, and utility beef is sold in the trade only for boning purposes. On the other hand, not one-tenth of 1 per centum of the choice, prime, and good grades of beef is boned. There is no boning of those grades by packing houses. The retailer would do the boning. After the utility grades are boned, they are sold under the description of the various cuts of beef such as shown by the testimony of the plaintiff. A customer trading with a boneless-beef establishment, in ordering, would not need to specify that boneless beef is required. Ordinarily, however, a customer wanting boneless beef must specify that "boneless" is desired. These witnesses were of the opinion that the bones removed from a carcass of beef constitute an average of 22 per centum of the weight of the carcass.

Six witnesses also testified on behalf of the Government. These witnesses had many years' experience in the wholesale handling of beef. Their testimony may be summarized substantially as follows: The classes known as fresh beef, chilled beef, and frozen beef refer to carcass beef and are well known in the wholesale beef trade in the United States. These terms are used generally in transactions between sellers and purchasers, and, unless particularly specified, do not include dressed beef that has been boned. An order for fresh beef, chilled beef, or frozen beef, without any further descriptive words, would not be accepted as an order for boneless beef. Nor would a delivery of boneless beef be accepted as a good delivery of frozen beef, chilled beef, or fresh beef. The term "carcass beef" is not used in the trade in ordering beef containing bone. It is understood that "bone-in carcass beef" is desired (Record p. 65), when the term "beef" is used. If beef were ordered, the purchaser would expect to receive beef in quarters without the bone removed. The

trade buys beef as fores and hinds. It is shipped as fores and hinds. In the price list description of cattle carcasses, the term "beef" is used together with various specifications designating grades. At the time of the importation of the beef in question, there were 10 grades within a certain weight specification. For example, beef had a basic number of 20. The top grades started at a low number, the lower the number the better the grade. A real good beef would be ordered as "a number 22 steer, or a number 22 beef." An order for chilled beef would be filled by a shipment of a carcass of beef, and the grade desired would be indicated by the number. Under present O. P. A. regulations, boneless cuts of beef are not permitted to be sold to wholesalers unless earmarked for processing. All of the Government witnesses were also of the opinion that the bone-in carcass beef would average between 22 and 24 per centum.

The plaintiff contends that Congress has clearly indicated its intention in using the word "beef" to mean flesh, when it based the duty on its weight and provided in paragraph 1627 for bones, and in other paragraphs of the law for hides, hoofs, horns, and various other portions of the cattle in its live state. It is further contended that the weight of the bones contained in the carcass is readily ascertainable in standard trade practices, and therefore the percentage of bones should be returned free of duty and the collector should make the allowance in assessing duty upon the beef. It is further contended that the common meaning of the term "beef" is restricted to the meat alone and does not include the bones. In support of its contentions the plaintiff relies upon the cases of *United States* v. *Amendola*, 5 Ct. Cust. Appls. 516, T. D. 35156; *Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. Appls. 267, T. D. 37536; and *United States* v. *Myers*, 11 Ct. Cust. Appls. 409, T. D. 39322.

The Government contends that inasmuch as the accuracy of the weigher's return of weight and the correctness of the allowance for tare have been conceded by the plaintiff, the question of weight is no longer at issue. It is further contended that carcass beef and boneless beef are two entirely different tariff commodities in that boneless beef has been held in *Baumgarten Bros.* v. *United States*, Abstract 49414, to be classifiable as preserved meats under paragraph 706, and beef carcasses, cut into quarters, are held in the case of *Geier & Geier, Inc.* v. *United States*, 13 Cust. Ct. 33, C. D. 865, classifiable as beef under paragraph 701, as not having been prepared for one use only.

The question at issue primarily concerns the classification of beef and the bones contained therein. The question of weight becomes pertinent only upon a holding that the bones are separately classifiable.

The common or dictionary meaning of the term "beef," as appearing in Funk & Wagnalls New Standard Dictionary, is:

1. The flesh of a slaughtered steer, cow, or other adult bovine animal. * * *

2. Any adult bovine animal; especially, a steer, cow, or bull fattened or to be fattened for the butcher. * * *

Webster's New International Dictionary defines "beef" as follows:

1. * * * An ox, cow, or bull, in a full-grown or nearly full-grown state; esp., an ox or cow fattened for food.
2. The flesh of an ox or cow, or of any adult bovine animal, when slaughtered for food.

*Beef* is meat derived from cattle nearly one year of age, or older. *U. S. Dept. of Agric.*

Alongside these descriptions in the foregoing dictionaries appear sides of beef such as ordinarily may be seen hanging in butcher shops, depicting and naming the various cuts of beef. In the Dictionary of Tariff Information, 1924, on page 64, "beef and veal, fresh" are defined as follows:

*Carcass beef* is placed on the market in three conditions—chilled, frozen, or unrefrigerated. The greater part is chilled or frozen, according to the conditions of shipment. Chilled beef is kept in refrigerator cars and is shipped at temperatures ranging from 32° to 38° F. At these temperatures chemical or bacterial action is greatly retarded and beef sides and quarters may be kept in good condition for from 30 to 60 days. Meat is frozen solid at about 16° F., the growth and reproduction of bacteria being thereby arrested. Experiments indicate that it may be maintained in wholesome condition for three years and probably much longer.

The weight of meat obtained averages somewhat over one-half of the weight of the live animal, but the amount received for meat is usually about 80 per cent of the total value of products. [Italics not quoted.]

In the Summary of Tariff Information, 1929, page 1029, beef and veal are described as follows:

Description and uses.—*The fresh carcasses, in addition to cuts for household, hotel, restaurant, and club uses, supply raw materials for pickled, cured, and other prepared meats, for sausage, canned beef, and meat extracts.*

\* \* \* \* \* \* \*

Imports.—Imports of fresh (chilled and frozen) beef and veal have been relatively small since 1915, but show a large increase during 1928. They come mainly from Canada, with increasing receipts of boned beef from New Zealand during 1928. [Italics not quoted.]

In comparison of prices of dressed beef in the United States with the prices in Canada and the United Kingdom, United States beef is listed in the foregoing summary as: "Western steer beef, New York, Medium sides, Good sides; Chicago choice sides"; Canada beef as: "Sides, carcass No. 1"; and United Kingdom (London) beef as: "Argentine chilled, Sides, Hind quarters; English beef, sides."

The common meaning of the term "beef" as given by the lexicographers, together with pictorial representations, and the description thereof in the Dictionary of Tariff Information, 1924, and the Sum-

mary of Tariff Information, 1929, as carcass beef or fresh carcasses, clearly indicates that the ordinary as well as the tariff meaning of "beef" embraces carcass beef. Congress, in enacting the Tariff Act of 1930, was cognizant of the definitions of "fresh beef and veal" as given in the foregoing, and, in writing the same into the act enlarged the scope of the provision in the Tariff Act of 1922 for fresh beef and veal by adding in paragraph 701 the further descriptive words— "fresh, chilled, or frozen." Had it been the intention of Congress to restrict the provision to a meat which had been further processed than dressed in carcass form, it easily could have so indicated. It might be noted, however, that paragraph 706 makes provision for meats which are prepared or preserved and not otherwise provided for.

The congressional intent, as claimed by the plaintiff, to provide only for flesh in the tariff term "beef" is not established by the record before us. The evidence establishes without contradiction that the term "beef" means carcass beef, and carcass beef is described as a dressed beef with the hide, hoofs, horns, and viscera removed. The evidence further establishes that carcass beef and boneless beef are two different commercial entities. One would not be a good delivery for an order of the other. As to utility grades of beef, 95 per centum of the imported quantities is used for boning purposes, while only one-tenth of 1 per centum of the choicer grades of carcass beef is boned, and such boning is performed by retailers rather than by the wholesaler. It is also clear from the evidence that the term "beef" is applied to carcass beef generally. If boneless beef is desired, the term "boneless" would have to be used in connection with the term "beef." The evidence clearly fails to establish that the tariff provision for "beef * * * fresh, chilled, or frozen" is restricted to beef which has been processed by the removal of the bones or by reducing the carcass to various cuts such as chucks, ribs, rounds, shoulder clods, loins, or other individual cuts, or that the wholesale trade and commerce of the United States regard the term "beef" as embracing only such beef as that which has had the bones removed.

The cases cited by the plaintiff are not in point in the particular controversy before us. In the case of *Baumgarten Bros.* v. *United States, supra,* boneless bull meat or beef was held properly dutiable as prepared meat, not specially provided for, under paragraph 706, rather than as chilled beef under paragraph 701. In the case of *Geier & Geier, Inc.* v. *United States, supra,* forequarters and hindquarters of beef. were held properly dutiable as chilled beef under the provision of paragraph 701. The court stated:

Since paragraph 701 of the Tariff Act of 1930 provides both for cattle and beef, it is evident that the provision for "beef" was intended to cover the commodity

described in definition 1, above. There are illustrations under that definition showing two sides of beef, with the different cuts outlined * * * all of which are portions of beef in common understanding.

In *American Fruit Growers, Inc., et al.* v. *United States,* 24 C. C. P. A. 177, T. D. 48643, green peas in the pod were imported from Mexico. The collector assessed the same for duty under paragraph 769 of the Tariff Act of 1930 upon the weight of the peas and pods. The importer claimed that an allowance should be made for the weight of the pods; that the term "Peas * * * Green or unripe," should be construed as excluding the pods; and that the pods are not included within the common meaning of the term "green peas." Our appellate court found that the term "green peas" includes shelled green peas and also peas in the pod and that the term "green peas" is commonly and commercially understood to include the pod. In our view, the question before us here is practically on all fours with the foregoing case. Carcasses of beef naturally include the bones, and the record before us establishes that the term "beef" embraces carcass beef. Even though the term "beef" were broad enough to include boneless beef, the beef here before us is carcass beef and not boneless and is therefore dutiable upon the basis of the net weight of such carcass, which naturally includes the bones. In view of our position in this case, it is unnecessary to comment upon the percentage of bones to a carcass, as established by the record.

For the reasons stated, judgment will be entered in favor of the defendant.