(C. D. 1526)

C. J. TOWER & SONS ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 28, 1953)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.
*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: These protests, consolidated at the trial, involve the following products imported from Canada on various dates in 1948, 1949, and 1950: Frozen boneless cow meat, carcass beef, with only the bones removed; frozen beef knuckles; and frozen beef tenderloins (fillets). This meat was produced by Canada Packers, Ltd., at its plants in Toronto and Montreal and shipped to the United States through the ports of Buffalo and Champlain, N. Y.

The merchandise was assessed with duty at 3 cents per pound, but not less than 10 per centum ad valorem, under paragraph 706 of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, T. D. 51802, as meats, prepared, not specially provided for. It is claimed that the merchandise is properly dutiable at 3 cents per pound under paragraph 701 of said tariff act, as amended, as frozen beef.

The pertinent provisions of the tariff act, as so amended, are as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 701 | Beef and veal, fresh, chilled, or frozen_____ | 3¢ per lb. |
| * | *          *          *          *          * | * |
| 706 | Meats, prepared or preserved, not specially provided for (except beef packed in air-tight containers and pickled or cured beef or veal). | 3¢ per lb., but not less than 10% ad val. |

At the trial, plaintiffs introduced the testimony of 16 witnesses, all of whom had had many years of experience in one phase or another of the meat industry, as employees or associates of either the producer of the imported merchandise, large meat-packing companies, such as Swift & Co., Armour & Co., and Cudahy Packing Co., retail or wholesale butchers, or manufacturers of meat products.

The method of production of the instant merchandise was described by Allan Harry Innes and Wilbert E. Bosnell, superintendents of the Montreal and Toronto plants of Canada Packers, Ltd., respectively, as follows: The grades of cattle in Canada, going from the best to the poorest, are choice, good, commercial, cutter, and canner. The instant merchandise is produced from cutter and canner cows, cows "that have ceased to be useful." After the cow is slaughtered, the head and feet are removed, and the hide is taken off. The viscera, kidneys, blood clots, and internal fats, including suet, are also removed. The carcass is then split into two sides, trimmed free of bruises, washed, scaled, and chilled. All grades of cattle are treated the same way up to this point. The better grades are then divided into commercial cuts, with the bones left in, whereas cutter and canner grades are quartered, and the bones and the neck or back strap, but not the sinews or tendons, are removed. The boneless beef is packed in containers of approximately 100 pounds per container, each box holding approximately a forequarter or a hindquarter. The containers are closed, strapped, and placed in a freezer until frozen solid. No salt or any other foreign substance is added.

Beef tenderloin is produced by separating out the meat which lies along the backbone on the inside of the hindquarter. It has no bone in it whatsoever. The knuckle is produced from the hip and is a round, solid piece of meat that lies between two other cuts known as the inside and the outside ham sets.

The record indicates that the terms, carcass beef, sides, quarters, and primal or wholesale cuts, such as round, chuck, short loin, flank, and rib, when designated in the meat trade, usually, but not necessarily, refer to beef with the bone in. The words "frozen beef" include both bone-in and boneless beef, but that term is not used in buying and selling meat, because it has no definite trade or commercial meaning. An order for "beef" or "frozen beef" is meaningless; the type, grade, and cut desired must be specified. Likewise, if boneless beef is wanted, that must ordinarily be stated. However, an order for frozen cow meat is understood to mean boneless meat. The greater part of the frozen beef of commerce in the United States is boneless. Canner and cutter grade beef is usually sold in boneless form, but in certain sections of the country cuts with the bone in are sold to lower income groups.

It appears from the testimony that frozen boneless beef of the cutter and canner grades is sold to several classes of purchasers for different uses: Retailers, hotels and restaurants, meat processors, canners, and the frozen-food industry. The purposes for which it is sold at retail includes use as roasting meat, corned beef, stew meat, chopped meat, boiling beef, and steak. After grinding and mixing with fat, it is sold as hamburger. Retailers also utilize it in pickling and corning and making sausage. Hotels and restaurants serve it in meat dishes and soup. Tenderloins are used largely by hotels and restaurants as filet mignon and steak. Processors utilize boneless beef for making smoked or dried beef, corned beef, hamburger, bologna, and sausage. Canners use it in preparing various canned meat products. It is also used by the frozen-food industry to make wafer thin, quick-frozen steaks.

As to the percentages absorbed by each class of purchaser, A. L. Scott of Swift & Co. testified that 30 to 35 per centum of the boneless cow meat of the cutter and canner grades is used in the fabrication of hamburgers, sausages, and bologna, and 10 to 25 per centum as steak. James J. O'Reilly of Armour & Co. stated that a large portion is used in canning or in manufacturing sausage and soup; that many cuts are sold over retail counters as roast, stew, or boiling beef; and that some of the beef is made into wafer size steaks and some into hamburger. According to William F. Spoon, the American Stores Co. used it exclusively to make hamburger, except the tenderloin which was sold as steak. Conrad Saunders of Canada Packers, Inc., said his firm sold 50 to 60 per centum to chain stores, which ground and sold it as hamburger, and the balance to processors, who make it into bologna and sausage.

At the trial, plaintiffs introduced into evidence a pamphlet, issued by the United States Department of Agriculture, Food and Drug Administration, in August 1933, containing the following definition:

Prepared meat is the product obtained by subjecting meat to a process of comminuting, of drying, of curing, of smoking, of cooking, of seasoning, or of flavoring, or to any combination of such processes.

The witnesses agreed with this definition and stated that the instant merchandise was not prepared meat in accordance therewith. It is not prepared, they said, because there has been no cooking, flavoring, seasoning, curing, drying, smoking, or pickling of the meat, no foreign substances have been added, nor has it been comminuted or ground.

Mr. Scott testified that it costs a cent and a half per pound to take the bones out of a carcass of beef; that a side of beef with the bone in would be worth 39 to 40 cents a pound; and that the same piece boneless would be worth 56 to 58 cents a pound. However, the latter is all meat, whereas a carcass with the bone in contains only 60 to 70 per centum of meat.

Mr. Scott added that the class of beef here involved is boned because it is acceptable to the trade that way. There was also testimony that boning advances the beef toward its eventual use in canning, curing, and drying, and in making sausage, bologna, and soup, and that if it arrived with the bones in, processors and canners would have to remove them before the meat could be used for their purposes. It was also stated that other operations, such as slaughtering the animal, splitting and quartering the carcass, and reducing it to wholesale cuts, prepare the meat for its eventual use.

The evidence shows that boneless meat requires further operations for use by the processor, such as trimming, removal of sinews or tendons, glands, and tissues. It must be cut into smaller pieces for use in canned beef stew and for grinding to make sausage or canned meats.

When boneless rounds are sold for roasts, they are cut into sections, the outside skin, tendons, and tissues are taken off, and the piece is tied up with fat in order to tenderize the meat. Fat is also added when boneless beef is chopped for hamburger.

No witnesses were produced by the Government. After the conclusion of plaintiffs' case, the Government moved to incorporate the records in the following cases, but said motions were denied:

*Baumgarten Bros.* v. *United States,* 12 Cust. Ct. 311, Abstract 49414.

*Geier & Geier, Inc.* v. *United States,* 13 Cust. Ct. 33, C. D. 865.

*Rael Schechter* v. *United States,* 16 Cust. Ct. 157, C. D. 1004.

The plaintiffs contend that the merchandise herein, frozen boneless cow meat, frozen beef knuckles, and frozen beef tenderloins, does not consist of meats which have been prepared but is no more than frozen beef, dutiable as such under paragraph 701 of the Tariff Act of 1930, as amended. The Government claims that the merchandise is dutiable as meat, prepared, under paragraph 706, as amended, because the boning operation has advanced it in condition toward, and made it more valuable for, its eventual use.

By definition beef is "The flesh of an ox or cow, or of any adult bovine animal, when slaughtered for food." (Webster's New International Dictionary, 1951 edition.) The instant merchandise consists of the flesh of cows, frozen, with the bones removed, divided into quarters, or separated from the carcass. Paragraph 701, as amended, covers "Beef and veal, fresh, chilled, or frozen." The witnesses testified, and it is evident, that the term "frozen beef" includes both bone-in and boneless beef. The question, therefore, is whether the merchandise is still frozen beef or whether the treatment of it has changed its character and identity so as to take it out of that category. Since the provision for frozen beef is more specific than that for prepared meat, it must control in case the merchandise falls within both paragraphs. See *Geier & Geier, Inc.* v. *United States, supra.*

The general rule is that "an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article." *Nootka Packing Co.* v. *United States,* 22 C. C. P. A. (Customs) 464, 470, T. D. 47464. That case involved clams, which, after shelling, had had the stomachs, entrails, and part of the necks removed, and which had been washed, drained, put through a mincer, placed in tins filled with brine, and cooked. The competing provisions of the Tariff Act of 1930 were paragraph 721 (b), covering clams packed in air-tight containers, and paragraph 1761 covering shellfish, prepared or preserved in any manner, and not specially provided for. The merchandise was held classifiable as clams on the ground that the mere mincing, cleaning, and cooking of the clams did not remove them from the designation of clams and that paragraph 721 (b) was not restricted to clams in their raw or natural state, nor to entire clams. The court held that it included "any clams in any condition, so long as they are clams."

Under the principle of that case, the imported merchandise appears to be classifiable under paragraph 701, as amended, since it is still frozen beef, although the bones have been removed. Its mere advancement in condition does not take it out of the *eo nomine* provision for frozen beef unless it has been so far advanced as to be converted into a new article. *Brown & Co.* v. *United States,* 6 Ct. Cust. Appls. 415, T. D. 35977; *Mawer Co.* v. *United States,* 7 Ct. Cust. Appls. 493, T. D. 37108; *United States* v. *Nippon Co.,* 32 C. C. P. A. (Customs) 164, C. A. D. 303; *Crosse & Blackwell Co.* v. *United States,* 36 C. C. P. A. (Customs) 33, C. A. D. 393. In those cases, the cooking and salting of soya beans, the pitting and stuffing of olives, the addition of sodium glutamate to kelp, and the peeling, pitting, slicing, and pickling of mangoes were held not to have advanced the articles sufficiently to take them out of their respective *eo nomine* classifications. It was brought out that as long as the article retains its name, form, characteristics, and uses, it is not removed from the specific designation therefor.

A case directly in point is *Neuman & Schwiers Co. et al.* v. *United States,* 4 Ct. Cust. Appls. 64, T. D. 33310, wherein the merchandise consisted of cans, each containing the meat of a cured and cooked ham, from which the bone had been removed. It was held dutiable as ham, under paragraph 284, Tariff Act of 1909, rather than as meat, prepared or preserved, under paragraph 286 of said act. The court said (pp. 65–66):

* * * It is immediately apparent that the *eo nomine* provision for hams is more specific than that for prepared or preserved meats and must control the assessment in case the importation nominally falls within both paragraphs.

   *        *        *        *        *        *        *

\* \* \* The question then arises whether or not the treatment of the article preliminary to its packing so changes its character and identity as to disentitle it to its original name. That treatment consists of two parts: First, the entire ham is cooked, and next, the thigh bone is removed. This is all that is done to the article before it is packed in the tin container. The court is of the opinion that the article in question does not lose its name and character as a ham by reason of either or both of these processes. The meat is, of course, the valuable part of the ham, and that is the real importation in any event; and when the entire meat of a single ham is packed alone in a single tin, not changed in any particular except that it has been cooked and the bone removed, it seems to the court that the contents of the tin may still be called a ham within the meaning of that term as used in the cited paragraph.

In the instant case, all that has been done to the cow meat is to quarter the carcass, remove the bones, and freeze it. The tenderloins have been removed from the carcass and frozen. The knuckles have been separated from the round and frozen. Paraphrasing the language of the *Neuman & Schwiers* case, we are of the opinion that the articles do not lose their name and character as frozen beef by reason of these processes. The meat is, of course, the valuable part of the beef, and that is the real importation in any event; and when the entire meat of the carcass or cuts thereof are imported, not changed in any particular except that the bones have been removed, it seems that the merchandise may still be called frozen beef within the meaning of the tariff act.

It is claimed by the Government, however, that the merchandise has been advanced so far by the boning operation that it is no longer frozen beef but has become meat, prepared.

There are a number of cases in which boneless beef has been found so changed or advanced as to be dutiable as meat, prepared. In *Central Vermont Railway Co.* v. *United States*, 52 Treas. Dec. 307, T. D. 42459, the merchandise consisted of the meat of bulls and canner cows, cut up into chunks with the bones extracted, packed in barrels with 1 per centum of salt. The court concluded from the testimony that such merchandise would be barred commercially from the class of fresh beef in the wholesale markets of the United States. It was, therefore, held dutiable as meat, prepared or preserved. In that case, the merchandise was changed by the addition of a foreign substance, salt.

*C. J. Tower & Sons* v. *United States*, 18 C. C. P. A. (Customs) 152, T. D. 44362, involved boneless bull meat, cut into such pieces and so packed and frozen as to form a cake of meat, known as bologna bull meat, and used for no other purpose than the making of sausage. The court held the merchandise dutiable as meat, prepared, under paragraph 706, Tariff Act of 1922, stating that it had been changed in form and advanced toward sausage "by having all sinews, fat, kidneys, tendons, and bones removed by skilled workmen, and then cut into parts which are evidently conveniently shaped and sized to be packed

in boxes which form a cake of meat, when frozen, weighing about 100 pounds." Similar merchandise was involved in *Baumgarten Bros.* v. *United States*, *supra*, where it was held dutiable under paragraph 706, Tariff Act of 1930, as meat, prepared, rather than under paragraph 701 as frozen beef.

These cases cited, and the Government relies upon, the definitions of "prepared" in *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783, and *Stone & Downer Co.* v. *United States*, 17 C. C. P. A. (Customs) 34, T. D. 43323.

In the *Conkey* case, the actual holding was that frozen lamb was dutiable as fresh lamb under paragraph 702, Tariff Act of 1922, by similitude, rather than as meat, prepared, under paragraph 706. In the course of the opinion, the court said (p. 555):

* * * When used in the tariff sense, the word "prepared" is sometimes used synonymously with preserved, but, in a general sense, it implies that the fresh or raw material has undergone certain mechanical changes, such as cutting, slicing, grinding, mashing, mixing, etc., and usually implies that it has been advanced toward the condition in which it is used, and frequently such preparation either aids or accomplishes preservation.

A similar definition was given in *Stone & Downer Co.* v. *United States*, *supra*, where it was held that dates, pitted, and sold for grinding purposes, were dutiable under paragraph 741, Tariff Act of 1922, as dates, prepared, rather than as fresh dates. In that case, the pitted dates were dedicated to a particular use. On the other hand, pitted and stuffed olives, retaining their characteristics and uses as olives, have been held classifiable as olives rather than as fruits, prepared. *Mawer Co.* v. *United States*, *supra*.

In the instant case, the merchandise has not been so far advanced as that involved in *C. J. Tower & Sons* v. *United States*, *supra*, nor has it acquired a new name, such as bologna bull meat, nor has it been adapted for any particular purpose. The evidence shows that it is used in all the ways that any meat, bone-in or boneless, is used.

The regulations of the Department of Agriculture, *supra*, define prepared meat as meat which has been subjected to comminuting, drying, curing, smoking, cooking, seasoning, flavoring, or any combination of such processes. The merchandise here involved has not been subjected to any of those processes. While definitions and standards established by the Department of Agriculture are not necessarily controlling in customs procedure, they are pertinent to the determination of the identity of particular products. *Gallagher & Ascher Co.* v. *United States*, 24 Cust. Ct. 1, 4, C. D. 1199, and cases there cited. In the instant case, all of the witnesses, experienced men in the meat industry, agreed with the definition and also expressed their own opinions that the instant merchandise is not prepared because it has not been subjected to any of the above-mentioned processes nor has any foreign substance been added.

Statements in the Summary of Tariff Information, 1929, prepared for the use of Congress in drawing up the Tariff Act of 1930, lend support to the view that boneless beef of the type here involved is not meat, prepared. Beef and veal are described therein as follows (pp. 1029–1030):

Description and uses.—The fresh carcasses, in addition to cuts for household, hotel, restaurant, and club uses, supply raw materials for pickled, cured, and other prepared meats, for sausage, canned beef, and meat extracts.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Imports.—Imports of fresh (chilled and frozen) beef and veal have been relatively small since 1915, but show a large increase during 1928. They come mainly from Canada, with increasing receipts of *boned beef* from New Zealand during 1928. [Italics supplied.]

This indicates that frozen beef was considered to come within the provision for "beef" and that boned beef fell into the same category. On the other hand, the products included under paragraph 706 are characterized as follows (p. 1046):

Imports.—Imports consist mainly of canned meats, chiefly·beef, and come largely from Argentina and Uruguay. There are also unimportant imports of canned rabbit meat and of frozen rabbits from Australia, or dried beef from South America, of miscellaneous canned meats, and of edible offal (livers, sweetbreads, etc.) and bologna and other sausage, chiefly from South America and Canada.

Other than the meats, not specially provided for, such as edible offal, the products referred to are·those which have been canned, dried, or made into sausage or bologna. These products are ready for use by the consumer, while boneless beef is utilized, among other things, to produce prepared meat in the forms mentioned (canned, dried, sausage, bologna).

Another consideration is the fact brought out by the record herein that there is now and also was prior to the enactment of the Tariff Act of 1930 very little production of frozen beef in other than the boneless form. Therefore, if the provision in paragraph 701 for frozen beef is construed to exclude frozen boneless beef, it would be largely nugatory. Such a construction is not to be adopted where any other interpretation is reasonable. *United States* v. *Baxter*, 9 Ct. Cust. Appls. 99, T. D. 37975; *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714; *Charles T. Wilson Co., Inc.* v. *United States*, 28 C. C. P. A. (Customs) 63, C. A. D. 126.

For the foregoing reasons, we hold that the merchandise, herein, frozen boneless cow meat, frozen beef tenderloins, and frozen beef knuckles, is dutiable at 3 cents per pound under paragraph 701 of the Tariff Act of 1930, as amended by the General Agreement on·Tariffs and Trade, T. D. 51802, as beef, frozen.

The protests are sustained and judgment will be rendered accordingly.