(C. D. 1852)

J. H. BROWN ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 5, 1957)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel); *Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel), associate counsel; for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before JOHNSON and DONLON, Judges

DONLON, Judge: One hundred forty-five (145) protests have been consolidated here for purposes of trial (R. 5). These protests challenge an issue that has already been litigated, namely, whether partly processed beef should be classified as beef or as meat.

This merchandise is boneless beef. Plaintiffs claim that it should be classified as beef, fresh, chilled, or frozen, under paragraph 701 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T. D. 51802). If their claim prevails, the merchandise is dutiable at 3 cents per pound.

The collector's report, attached to protest 226724–K, states that this merchandise was classified as meats, fresh, chilled, or frozen, not specially provided for, under paragraph 706, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, the President's proclamation of June 2, 1951 (T. D. 52739), effective June 6, 1951. Duty was charged in liquidation at 3 cents per pound, but not less than 10 per centum ad valorem.

This statement of the issue, as raised by the pleadings, does not, however, fully reflect the controversy, because defendant has shifted ground since liquidation. The Government now claims that this boneless beef was so far processed that it no longer is subject to classification in a fresh, chilled, or frozen condition, either as beef or as meat. Defendant, therefore, no longer supports the collector's classification in liquidation (which was meats, fresh, chilled, or frozen), contending now that processing had so advanced this merchandise that proper classification should be as *meats, prepared*, under paragraph 706 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T. D. 51802). That classification would impose duty at the same rate as the duty assessed, namely, 3 cents per pound, but not less than 10 per centum ad valorem.

That this is the real controversy is indicated by the briefs of the parties. Indeed, both assert (although mistakenly, it appears) that classification in liquidation was on the basis defendant now claims. However, the report of the collector on protest, attached to the lead protest 226724–K of the consolidated group, states that classification in liquidation was under T. D. 52739, as "Meats, fresh, chilled or frozen nspf. other." Since the official papers were not put in evidence, we must rely on the correctness of the collector's report.

It has been stipulated that this merchandise is beef of cows and bulls, imported in a fresh, chilled, or frozen condition. The facts as to processing have likewise been stipulated (R. 9–15). The records in two prior cases have been incorporated into the record now before us. Both parties called witnesses.

The earlier of the incorporated cases is *C. J. Tower & Sons et al.* v. *United States*, 30 Cust. Ct. 235, C. D. 1526 (1953). The later is *Swift & Company et al.* v. *United States*, 33 Cust. Ct. 121, C. D. 1655 (1954).

The record in the *Tower* case was incorporated into the record in the *Swift* case. The record in the *Swift* case, including the *Tower* record, has been incorporated into the record in the consolidated cases now before us. Thus, both records are now part of this record.

Much about the processing of the instant merchandise is essentially similar to the processing of the merchandise in the *Tower* and *Swift* cases. The issue, in each of those cases, as here, was whether the degree of processing had advanced the beef to a point which called for classification as prepared meats, rather than as beef, in a fresh, chilled, or frozen condition. In the *Tower* and *Swift* cases we held the degree of processing had not so advanced the beef there involved. From our decisions in those cases, adverse to its claim, defendant did not appeal.

There is no tariff classification for prepared beef. There is tariff provision for beef, fresh, chilled, or frozen. There is also tariff provision for meats, prepared.

In common understanding, beef is meat, and meat may be beef. The crux of the problem is whether this beef is, for tariff purposes, in a fresh, chilled, or frozen condition, but not prepared, as plaintiffs argue; or whether, as defendant contends, it is prepared, even though it is also either fresh or chilled or frozen.

For purposes of our decision, this merchandise may be divided into two categories: First, all of the merchandise, save only the diced or cut stew meat; second, the diced or cut stew meat.

On the record before us, and on authority of the decisions in the *Tower* and *Swift* cases, we hold that the merchandise (except the diced or cut stew meat) is properly to be classified as beef, fresh, chilled, or frozen, under paragraph 701 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T. D. 51802). We hold that the diced or cut stew meat is properly to be classified as meats, prepared, under paragraph 706 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T. D. 51802).

Except for the stew meat, which we shall consider later, the processing of this beef does not, in our opinion, call for a decision different from that reached in the *Tower* and *Swift* cases.

Our decision is not to be construed as an indication that removal of all tendons, sinews, and ligaments from beef might not constitute preparation of beef, so as to change its tariff status. The record before us does not call for such a conclusion. The facts of record before us both control and limit our decision. What are the facts?

Briefly, the processing included slaughtering the cows or bulls; removal of the hide, head, feet, viscera, blood clots, intestines, some fat, suet, and bruises; chilling and quartering the meat, and cutting it into butts, rounds, chucks, rolls, clods, strip loins, strips and shank meat; removing the backstrap and neck cord; removing also the flank sinews; trimming off the protruding end of the shank cord or tendon; removing the bones and kidneys; thereafter, shipping the beef, so processed, to the United States in either a fresh, chilled, or frozen condition. The stew meat, but only that, was diced or cut.

There seems to be no evidence of record in the *Swift* or *Tower* cases, *supra*, that tendons, sinews, or ligament, other than the backstrap and neck cord, were removed. Here, there is evidence, at least as to some of the beef, that flank sinews were removed, and the protruding end of the shank cord or tendon was trimmed off. There is considerable evidence in the *Swift* case as to the cuts into which the carcasses were processed and that many of them had been boned.

We are of opinion that removal of the flank sinews and trimming the protruding end of the shank cord do not constitute preparation to a degree that sufficiently differentiates this merchandise from that in the *Tower* and *Swift* cases. In both of those cases, the court reviewed

the evidence that has been incorporated into the record now before us. We follow the decisions in the incorporated cases, except as to the diced or cut stew meat.

That merchandise has been processed beyond the processing of the merchandise in the *Tower* and *Swift* cases. In our opinion, the diced or cut stew meat has become a new commercial entity and, within the definition in *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783, should be classified as prepared meat.

The evidence shows that diced stew meat is boneless chuck that has been cut into pieces an inch or an inch and a half long and that, as thus processed, it is ready for use in canning, or to make soups or stews (R. 39).

In the *Conkey* case, *supra*, our appeals court laid down a definition of the word "prepared," which has long been accepted. We accept it here.

* * * When used in the tariff sense, *the word "prepared"* is sometimes used synonymously with preserved, but, in a general sense, it *implies that the fresh or raw material has undergone certain mechanical changes, such as cutting, slicing, grinding, mashing, mixing, etc., and usually implies that it has been advanced toward the condition in which it is used,* and frequently such preparation either aids or accomplishes preservation. [P. 555.] [Emphasis supplied.]

One matter remains for disposition. Defendant, in its brief, argues the evidence of record shows that at, prior to, and subsequent to June 18, 1930, when the Tariff Act of 1930 became effective, the term beef included "only" carcass beef in its various cuts, with the bone naturally in, except tenderloins or strips with the bone naturally out. We do not find in the testimony before us any such conclusive evidence of a 1930 trade usage.

Beef is, and in 1930 was, a term relatively meaningless in the trade, except in combination with something else to make it properly descriptive. While there is testimony of a witness that an order for beef, without more, would be filled as an order for carcass beef, yet, there is also evidence which colors or clouds this testimony. Two excerpts from testimony of a witness for defendant are illustrative:

Q. Are carcass beef and the various cuts of carcass beef and boneless beef two separate commercial entities?—A. Yes, sir.

Q. Would an order for one be properly filled by delivery of the other?—A. No, sir, not unless it was so designated.

Q. Unless understood, must boneless beef be ordered as boneless beef and not just beef?—A. Must be ordered as boneless beef.

Q. Does it matter in either instance whether the meat is fresh, chilled or frozen? Does it make any difference, whether you are buying carcass meat or boneless, you would still buy it that way?—A. It would have to be designated or stipulated on it what it was.

Q. Does the boning and the removal of the other items we already mentioned remove the meat from the mere designation as beef?—A. No, sir. [R. 62, 63.]

\*　　\*　　\*　　\*　　\*　　\*　　\*

R Q. If you wanted a thousand pounds of beef, how would you order it?—A. I would order it by the carcass, or by the sides, or so many sides.

R Q. Or by the type?—A. Yes, grade, quality.

R Q. That is merely to describe the portions that you wanted?—A. That is right. [R. 78.]

From the record, it might be inferred that witnesses were, at times, confused. There was a running fire of interjections. Counsel, on both sides, seem to have tried to lead witnesses. All this makes the evaluation of testimony difficult. It can be said, however, that defendant has not proved, by the weight of evidence, a definite, uniform, and general 1930 commercial designation of carcass beef, and only carcass beef, as beef.

For the reasons stated, we hold that the merchandise in all of these protests, except only the diced or cut stew meat, is properly to be classified as beef, fresh, chilled, or frozen, dutiable at 3 cents per pound under paragraph 701 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T. D. 51802); and that the diced or cut stew meat is properly to be classified as meats, prepared, dutiable at 3 cents per pound, but not less than 10 per centum ad valorem, under paragraph 706 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade.

Judgment will be rendered accordingly.