UNITED STATES v. BROWN & CO. (No. 1935).[1]

EVIDENCE, JUDICIAL KNOWLEDGE—PRESUMPTION FAVORS COLLECTOR.

The results effected by steaming sugar cane and packing it with sugar and water in hermetically sealed tins are not within the judicial knowledge; and the court is unable to say that such merchandise is either sugar cane in its natural state or sugar cane unmanufactured, within the meaning of those expressions in paragraph 178, tariff act of 1913. The only evidence as to the nature of the commodity being the classification of the merchandise by the collector as "sweetmeats," under paragraph 217, the decision of the Board of United States General Appraisers sustaining the protest of the importers is reversed.

United States Court of Customs Appeals, April 15, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42439.

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, of counsel), for the United States.

Submitted on record by appellees.

[Oral argument Jan. 10, 1919, by Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Sugar cane steamed and packed with sugar and water in hermetically sealed tins was classified by the collector of customs as a sweet-

[1] T. D. 37992 (36 Treas. Dec., 368.)

meat and was assessed for duty at 20 per cent ad valorem under that part of paragraph 217 of the tariff act of 1913, which, in so far as pertinent to the case, reads as follows:

217. * * * Comfits, *sweetmeats*, and fruits of all kinds preserved or packed in sugar, or having sugar added thereto or preserved or packed in molasses, spirits, or their own juices, * * * 20 per centum ad valorem; * * *.

The importers claimed that the merchandise was either sugar cane in its natural state or sugar cane unmanufactured and that it was therefore dutiable at 15 per cent ad valorem under that part of paragraph 178 of the act of 1913 which reads as follows:

178. * * * Sugar cane in its natural state, or unmanufactured, 15 per centum ad valorem; * * *.

On the hearing no evidence was introduced and the importers citing Abstract 24736 (T. D. 31255) submitted the case to the board for decision on the official sample and on the appraiser's report, from which it appeared that the importation was sugar cane, which, after preparation by a process of steaming, had been packed with sugar and water in hermetically sealed tins.

The Board of General Appraisers found that the sugar cane so prepared was, or rather appeared to be, a commodity of the same kind as that passed upon in Abstract 24736 (T. D. 31255), in which it was held that the commodity was dutiable, by similitude, as sugar cane in its natural state. Following the decision there made the board ruled that the tinned goods here in controversy were dutiable at 15 per cent ad valorem under paragraph 178 of the tariff act of 1913.

The record in Abstract 24736 (T. D. 31255) was not introduced in evidence and if it had been it is questionable whether in the absence of other proof it would have afforded much information as to the true nature and character of the importation now under consideration. In fact, so far as appears from the board's decision in that case, the article which the board there had under consideration was not subjected to the same treatment as that applied to the merchandise here in issue; that is to say, it was neither steamed nor packed in sugar and water.

Possibly the steaming process applied to the goods involved in this appeal was designed to accomplish nothing more than the killing of the germs of fermentation, and therefore the preservation of the cane in its natural state when inclosed in hermetically sealed tins. But that such was the purpose is not disclosed by the record and for all that we know the steaming of the sugar cane stripped of its outer bark was designed to result, and did result, in wholly or partially cooking the article. Besides partially or wholly cooking the cane the steaming may have expelled some of its moisture and if it did then the packing in sugar and water might well result in the absorption of additional sugar, in which event the processed article certainly could no longer be re-

garded as sugar cane in its natural state. Moreover, as the purpose and effect of steaming the cane and packing it in sugar and water was not shown we can not safely say that such a processing of the raw material did not advance it to the status of a manufacture by fitting it for a use for which in its untreated condition it was wholly unsuitable.

The results effectuated by the processes applied to the sugar cane are not within the judicial knowledge and the only evidence before us as to the nature of the commodity is the collector's finding that it is a sweetmeat. That finding negatives the idea that the merchandise is either sugar cane in its natural state or sugar cane unmanufactured and as it is not impeached by any evidence to the contrary or by any fact or facts of which we can take judicial notice, it must be accepted as correct. To hold otherwise would, in violation of settled principles of law, accord to the bare declaration of the importers' protest the presumption of correctness and deny that presumption to the formal decision of the officer charged by customs laws with the duty of classifying imported merchandise.

In this case, as in other cases, the duty was on the importers to establish the claim set up in their protest. The protestants utterly failed to meet that obligation and as we can not say that the collector was wrong and much less that the importers were right we must con clude that the protest should have been overruled.

The decision of the Board of General Appraisers is therefore *reversed*.