UNITED STATES *v.* GUY B. BARHAM CO., a/c VINCENTE PERALTA C.

**No. 7444.**—Invoice dated Mexico, D. F., May 29, 1944.
Certified May 31, 1944.
Entered at Los Angeles, Calif., June 17, 1944.
Entry No. 3799.

(Decided November 19, 1947)

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the plaintiff.

*Harper & Harper* (*George R. Tuttle* and *Charles J. Evans* of counsel) for the defendant.

EKWALL, Judge: This is an appeal filed by the collector of customs at the port of Los Angeles from a finding of value on an importation of ladies' leather gloves imported from Mexico, the exportation date being May 31, 1944. The gloves were in two sizes, 12 inches and 16 inches. The 12-inch gloves were entered and appraised at $1.75 per pair and the 16-inch at $2.49; Mexican tax of $2.55 was added to the totals. The record is silent as to whether this represents foreign or export value. It is contended on behalf of the collector that the

export value is the proper basis of appraisement and that such values are $2.30 per pair for the 12-inch gloves and $4 per pair for the 16-inch gloves. The Mexican tax is not contested.

The Government produced the testimony of three witnesses who gave prices of alleged comparable merchandise, in an attempt to sustain the collector's contention. The first witness, a department manager and buyer of gloves for the retail dry goods firm of J. W. Robinson Co. of Los Angeles, testified that she had been so employed by that firm for the past 35 years; that on or about April 17, 1944, a young woman who said she came from the consul general of Mexico in Los Angeles, spoke to her in relation to the purchase of ladies' leather gloves from Mexico in 12-inch and 16-inch lengths, and displayed some gloves to her. Subsequently, the witness placed an order for the gloves. There was received in evidence as plaintiff's exhibit 1 a photostatic copy of this order. The witness stated that the exhibit represented the order for the merchandise that was shown to her, and that the young woman who called upon her told her that Manuel Ramirez, whose name appears on this order, was the manufacturer of the gloves. This witness stated that she did not believe that all the merchandise was delivered at one time but that there were two deliveries; that she believed that her firm paid the duty plus the prices at which this merchandise was supposed to be priced in Mexico, and further, that the purchase price evidently was paid to Vincente Peralta, Consul General of Mexico, because the young woman with whom she dealt said she was from the consul's office. The name of the gloves delivered was BelMex and a photostatic copy of the invoice of June 30, 1944, was received in evidence as exhibit 2. This witness further testified that "the goods were to be from Mexico" and J. W. Robinson Co. was to pay the duty in addition to the price.

The United States examiner of this type of merchandise at the port of Los Angeles identified illustrative exhibit B in evidence as hand-sewn gloves from Mexico which he had taken out of the importation now before the court. He testified that there were subsequent importations of identical merchandise from the same shipper; that merchandise subsequently imported was consigned to the J. W. Robinson Co.; that the trade name of the shipper was BelMex, the shipper of the gloves before the court; that the date of exportation of similar merchandise shipped from the same shipper to Robinson Co. was July 8, 1944; that the entered value of the 12-inch gloves was $2.30 per pair and of the 16-inch, $4 per pair; that the invoice showed that the merchandise was shipped from Mexico City, Mexico. He further testified that the merchandise as represented by illustrative exhibit B is identical merchandise to that contained in the subsequent Robinson shipment.

The third witness introduced by the Government, Mr. Leroy B. Powers, a customs agent at the port of Los Angeles, testified that he made an investigation of this importation. In the course of this investigation, he visited the office of the consul general of Mexico at Los Angeles, Colonel Vincente Peralta, and interviewed one of the vice consuls, after having been informed that the consul did not speak English fluently and had instructed the vice consul to furnish the Government agent with the information desired. Through this source he was informed that the seller of this merchandise had sent samples of these gloves to Colonel Peralta with the request that he interest some Los Angeles merchant in the purchase of the gloves; that the J. W. Robinson Co. had placed an order for gloves of this kind, but that he did not have a copy of the order in his file; that the first shipment which had been cleared on the four informal entries had been delivered to the J. W. Robinson Co. as a partial delivery on the order previously placed by that company. The vice consul had in his possession and showed this witness an invoice dated June 1, 1944, to the J. W. Robinson Co., stating that it represented the gloves that had been cleared on the four informal entries. The quantities and sizes were the same as the total shown on the four informal entries. The witness was not certain whether the invoice showed the name of Colonel Peralta or the Consul General of Mexico, but stated that in addition to the unit values of $2.30 for the 12-inch gloves and $4 for the 16-inch, the invoice also included duties in an amount equal to that which had been paid on the four informal entries. During the course of this interview, the vice consul informed this witness that a second importation, which the witness stated is covered by the consular invoice now before us, had been shipped to Colonel Peralta and after having been cleared through the customs, it had been delivered to the J. W. Robinson Co. on an invoice dated June 30, 1944, which the witness stated is exhibit 2 herein.

Is this evidence sufficient to sustain the collector's burden of proof that not only are the values found by the appraiser incorrect under the statute, but that the higher values claimed by the collector as the export value are the proper values? As contended by defendant's counsel in his brief, the appellant in order to prevail must establish all the essential elements necessary to enable the court to make a valid appraisement. See *Meadows, Wye & Co. et al.* v. *United States,* 17 C. C. P. A. (Customs) 36, T. D. 43324, where the court used the following language:

* * * Accordingly, it is incumbent upon the party who perfected the appeal to meet every material issue involved in the case. * * *

This case arose under an earlier act, but in *United States* v. *H. W. Robinson & Co.*, 69 Treas. Dec. 1427, 1430, Reap. Dec. 3817, Judge Evans, speaking for the court, made it plain that the principle there enunciated was equally applicable to the 1930 act. We quote therefrom as follows:

The *Meadows, Wye & Co.* case arose under the act of 1922, at which time no presumption of correctness attached to the appraiser's finding of value. In the instant case, which arose under the act of 1930, there is such a presumption. We think the above requirements as to proof are equally applicable to the Government in a case in which it is the appellant, as they are to the importer when he is the appellant.

This same principle was recognized and adhered to in *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. (Customs) 251, T. D. 46057, wherein the court said:

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the nonexistence of an export value, or (2) an export value and the nonexistence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." * * *

Further in relation to the requirements of proof the case of *United States* v. *Spiritos Music School*, 2 Cust. Ct. 801, Reap. Dec. 4490, held:

In our judgment the lower court committed error in giving any probative value to the proof introduced on behalf of the importer. It utterly fails to establish the elements necessary to prove value in this court. There is no competent evidence of the existence of a foreign value or an export value for such or similar merchandise, or if both exist, which is higher. No competent proof was submitted to show the usual wholesale quantities in which such or similar merchandise was bought and sold in the ordinary course of trade at the times of exportation of the instant merchandise. No evidence of probative value was offered to show the principal markets of the country of exportation for such or similar merchandise.

It is the opinion of the court that the record is lacking in the essential elements necessary to prove export value under section 402 (d) of the Tariff Act of 1930. The Government relies upon invoices of what are claimed to be similar goods from Mexico and testimony as to sales made in response to offers made in this country, but the record is lacking in proof as to the usual wholesale quantity, the location of the principal market, and whether a foreign value exists for this or similar merchandise, and if so, whether such value is higher or lower than the value for export.

I am of opinion and so hold that the presumption of correctness attending the finding of value by the appraiser has not been overcome. I therefore find the appraised values to be correct.

Judgment will be rendered accordingly.