# UNITED STATES *v.* WESTERN ELECTRIC COMPANY

No. 7954.—

Entry No. 1965.

(Decided February 13, 1951)

*David N. Edelstein*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the plaintiff.

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* of counsel), for the defendant.

MOLLISON, Judge: This litigation involves an appeal for reappraisement by the United States initiated by action taken by the collector of customs at the port of Chicago. The merchandise involved is a shipment of varnish imported by the Western Electric Company from Canada; it was entered and appraised at a value of 12½ cents per pound, plus cost of drums, as a coal-tar product, upon the basis of the American selling price (which is defined in section 402 (g), Tariff Act of 1930 (19 U. S. C. § 1402 (g), as amended by section 8, Customs Administrative Act of 1938)) of a similar competitive article manufactured in the United States, in accordance with the provisions of paragraph 28 (c), Tariff Act of 1930 (19 U. S. C. § 1001, par. 28 (c)). For ready reference the cited provisions of law are quoted in the margin.[1]

Briefly stated, it is the contention of the plaintiff that the merchandise in issue is not a coal-tar product and hence is not dutiable on the American-selling-price basis of valuation.

The facts of the case are not in dispute. The only evidence offered and received at the trial of the cause was plaintiff's exhibit 1, a customs agent's report on the very shipment of merchandise involved in this appeal. It is claimed by the Government that this report shows that a foreign value (which is defined in section 402 (c) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938) existed for the merchandise; that the sales to the importer were "accommodation sales" caused by the existence of unusual conditions prevailing in the plant of the Bakelite Corporation, an American subsidiary of the exporter; that the

---

[1] PAR. 28. Coal-tar products:

\* \* \* \* \* \* \*

(c) The ad valorem rates provided in this paragraph shall be based upon the American selling price (as defined in subdivision (g) of section 402, Title IV), of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (e) of section 402, Title IV.

\* \* \* \* \* \* \*

SEC. 402. VALUE.

\* \* \* \* \* \* \*

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

shipper did not sell its products for export to the United States in the ordinary course of trade, and that export value (which is defined in section 402 (d) of the Tariff Act of 1930) was thus removed from consideration; that the merchandise was offered for sale in Canada for home consumption in the usual wholesale quantities at the prices listed in the report, exhibit 1. It is further claimed that the report would establish the usual wholesale quantities and prices at which offered; that the report would establish 45 cents per pound, plus the cost of drums, to be the correct dutiable foreign value of the merchandise herein. No other evidence was offered by the plaintiff than the customs agent's report, exhibit 1.

However, the plaintiff's attorney in his brief calls to the court's attention an amended customs laboratory report, dated December 5, 1946, which it is claimed "is part of the official papers herein" and "established that the merchandise was properly dutiable under the provisions of paragraph 75 of the Tariff Act of 1930, as a spirit varnish, and not as a coal tar product dutiable under paragraph 28." Government counsel points out that the defendant offered no evidence and claims that the "amended chemist's report, part of the official file, and Exhibit 1 contain sufficient facts to overcome the presumption of correctness attaching to the appraised value, and also to establish another correct dutiable value for the said merchandise."

It is claimed by the defendant-importer that there is a fatal defect and lack in the plaintiff's proof; that upon a collector's appeal for reappraisement, as well as upon an importer's appeal, in order to prevail, the plaintiff must establish all essential elements necessary to enable the court to make a valid appraisement, citing *United States* v. *Guy B. Barham Co.*, 19 Cust. Ct. 321, Reap. Dec. 7444. The defendant-importer likewise contends that where, as here, goods have been appraised as coal-tar products upon the basis of American selling price, the plaintiff in a reappraisement appeal would be under a burden to establish that the merchandise was not in fact a coal-tar product, and relies upon *A. Hauptmann, Inc.* v. *United States*, 70 Treas. Dec. 1256, Reap. Dec. 3934, affirmed without opinion by an equally divided court in *United States* v. *A. Hauptmann, Inc.*, 25 C. C. P. A. (Customs) 323, T. D. 49423, as authority. Defendant contends that it was incumbent upon the Government to prove by competent evidence that the varnish was not a coal-tar product.

It is pointed out by the importer's counsel that the only matter pertaining to the issue of whether or not the varnish was a coal-tar product is an amended chemist's report of the United States Customs Laboratory at Chicago; this amended chemist's report appears as a "part of the official papers" or "official file." *But this report was not offered in evidence and was not received in evidence upon the trial of the cause.* Defendant-importer's counsel contends that the

amended chemist's report is not competent evidence merely because it is "part of the official papers" or "of the official file" and further that there is doubt whether it would be admissible under section 501 of the Tariff Act of 1930 (19 U. S. C. § 1501) (superseded by 28 U. S. C., 1948 rev., § 2633), even if it had been offered in evidence. It is further contended that since that amended chemist's report was neither offered nor received in evidence, it cannot be considered by the court, and that without the report there is no proof in the record that the goods are not coal-tar products, a fact which must be established by the plaintiff to overcome the presumption of correctness attaching to the appraisement of the merchandise.

There is nothing in plaintiff's exhibit 1 which establishes that the varnish in issue is not a coal-tar product and it is clear that the plaintiff will have failed to sustain the burden of overcoming the presumption of correctness attaching to the appraisement of the merchandise as a coal-tar product unless the court can consider the amended chemist's report in the official files or official papers as establishing the truth of the recitals and statements therein contained, i. e., that the merchandise is a spirit varnish and not a coal-tar product, or unless the statements contained in said chemist's report are of such common and general knowledge that they may be judicially noticed.

Since the amended chemist's report was not offered in evidence, it is not necessary to decide, and I do not decide, whether the amended chemist's report would be admissible under 28 U. S. C., 1948 rev., § 2633, as a permissible statutory exception to the hearsay rule.

The Customs Court is a court of justice and the same rules of evidence, practice, and procedure apply in this court as in courts of general jurisdiction and in other Federal courts. Judiciary and Judicial Procedure Act, approved June 25, 1948, 28 U. S. C. §§ 1581, 1651–1654, 1691, 1731–1741, 1781–1785, 1821–1825, 2071, 2201–2202, 2601, 2631–2641; *W. T. Grant Company* v. *United States*, 38 C. C. P. A. (Customs) 57, C. A. D. 440; *United States* v. *Macy & Co., Inc.*, 13 Ct. Cust. Appls. 245, 249, T. D. 41199; *United States* v. *International Graphite & Electrode Corp.*, 25 C. C. P. A. (Customs) 74, T. D. 49066, at p. 77, citing *United States* v. *Macy & Co., Inc., supra*, with approval.

A judge of the Customs Court is not permitted to go beyond the evidence in the case and take notice, in deciding the case, of documents and papers which have not been offered in evidence and which have not been legitimately made a part of the record of the case which has been tried and submitted for decision and judgment. *United States* v. *Baiz & Co.*, 5 Ct. Cust. Appls. 319, T. D. 34526; *United States* v. *Burley & Tyrrell Co.*, 5 id. 401, T. D. 34938; 2 Hyatt on Trials, sec. 1968, note 44.

The findings of the Customs Court must be based on evidence presented in the case, with an opportunity to all parties to know of the evidence to be submitted or considered, to cross-examine witnesses, to inspect documents, and to offer evidence in explanation or rebuttal, and nothing can be treated as evidence which is not introduced as such. *Interstate Commerce Commission* v. *Louisville and Nashville Railroad Co.*, 227 U. S. 88, at pp. 91, 92, and 93; *The Chicago Junction* case, 264 U. S. 258, at pp. 263 and 265; *United States* v. *Abilene & Southern Railway Co.*, 265 U. S. 274, at p. 288; *United States* v. *Burley & Tyrrell Co.*, 5 Ct. Cust. Appls. 401, T. D. 34938, at p. 403.

Of course, this last principle of law must be considered with and in the light of rules of evidence dispensing with proof, such as judicial notice (dealt with hereafter), presumptions, etc., which may be properly applied in a given case.

Proof of the value, condition, character, or nature of the merchandise involved in a case in the Customs Court, unless waived by the adversary party, must be made in the same manner as any other facts which the party in question is called upon to establish by substantive evidence. *United States* v. *Bird*, 11 Ct. Cust. Appls. 229, T. D. 38991, at p. 232; *Wanamaker* v. *United States*, 6 Ct. Cust. Appls. 21, T. D. 35271; *United States* v. *Burley & Tyrrell Co.*, *supra*.

If the plaintiff intended to rely upon the amended chemist's report as establishing that the merchandise was of a different nature and character than appraised, then said report should have been offered to the court as evidence for that purpose. *W. T. Grant Company* v. *United States*, *supra*; *United States* v. *Abilene & Southern Railway Co.*, *supra*; *Interstate Commerce Commission* v. *Louisville and Nashville Railroad Co.*, *supra*; *United States* v. *Bird*, *supra*. The plaintiff failed to do that and this record is devoid of any evidence to support an essential finding of fact necessary for plaintiff to establish in order to overcome the presumption of correctness attaching to the appraisement of the goods as a coal-tar product dutiable under paragraph 28, upon the basis of the American selling price. *A. Hauptmann, Inc.* v. *United States*, 70 Treas. Dec. 1256, Reap. Dec. 3934, affirmed without opinion in *United States* v. *A. Hauptmann, Inc.*, 25 C. C. P. A. (Customs) 323, T. D. 49423.

Where, as here, a party in order to sustain an essential element of his proof relies upon the contents of a paper or document contained in or included in the "official files or papers" as tending to prove the truth of the matters recited therein, the mere presence or inclusion of such paper or document in the "official files or papers" will not suffice to prove the truth of the contents of said paper or document, but it must, like all other documents and papers, be offered and properly received in evidence before it may be considered by the court in

deciding the case. *W. T. Grant Company* v. *United States, supra; Interstate Commerce Commission* v. *Louisville and Nashville Railroad Co., supra; United States* v. *Abilene & Southern Railway Co., supra,* at p. 288; *United States* v. *Baiz & Co., supra; United States* v. *Burley & Tyrrell Co., supra; United States* v. *Bird, supra; Wanamaker* v. *United States, supra.*

That the merchandise involved in this case is a spirit varnish and not a coal-tar product is not a fact so generally and commonly known or a fact of such notoriety that it may be safely assumed to be within the knowledge of the court and which therefore need not be maintained by evidence. Jones, Evidence, 4th ed. sec. 105, Vol. 1, pp. 187–9; Greenleaf, Evidence, 16th ed. Vol. 1, p. 8, sec. 3a; *United States* v. *Kuyper & Co.,* 6 Ct. Cust. Appls. 142, T. D. 35393; *United States* v. *Brown & Co.,* 9 Ct. Cust. Appls. 146, T. D. 37992; *United States* v. *Sheldon & Co.,* 13 Ct. Cust. Appls. 53, T. D. 40880.

The mere presence or inclusion of a paper or document in the "official files or papers" does not render the contents of said paper or document the subject of judicial cognizance. The matters contained in the amended chemist's report are not specific facts of general knowledge so notoriously true that they may not be ignored or disputed, and manifestly such statements are not the subject of judicial knowledge which may be availed of by the plaintiff to sustain the burden of overcoming the presumption of correctness attaching to the appraisement made herein.

In this view of the case it is not necessary to decide whether plaintiff, by virtue of the customs agent's report, exhibit 1, established the statutory elements of a foreign value of the merchandise involved herein, the plaintiff having failed to overcome the presumption of correctness attaching to the appraisement.

I find as facts:

(1) That the merchandise consists of cresol-base laminating varnish imported from Canada on September 22, 1946.

(2) That the merchandise is a coal-tar product.

(3) That at the time of exportation of the said varnish, the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such varnish was freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, was 12½ cents per pound, plus cost of drums.

As matters of law I hold:

(1) That by virtue of paragraph 28 (c) of the Tariff Act of 1930 the proper basis of value of the varnish covered by this appeal for reappraisement is the American selling price of a similar competitive article manufactured in the United States as the said American selling price is defined in section 402 (g) of the Tariff Act of 1930, as amended, *supra*.

(2) That the said American selling price of the merchandise in issue is the entered and appraised value.

Judgment will be entered accordingly.