(C. D. 1655)

SWIFT & COMPANY ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 10, 1954)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.
*Warren E. Burger*, Assistant Attorney General (*Harold L. Grossman* and *Henry J. O'Neill*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: The merchandise involved in these protests, consolidated at the trial, consists of various items of fresh and frozen boneless beef derived from cows and from bulls.[1] They were assessed with duty at 3 cents per pound, but not less than 10 per centum ad valorem, under paragraph 706 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as meats, prepared, not specially provided for. It is claimed that they are properly dutiable at 3 cents per pound under paragraph 701 of the said tariff act, as modified, as fresh or frozen beef.

The pertinent provisions of the tariff act, as modified, are as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 701 | Beef and veal, fresh, chilled, or frozen_____ | 3¢ per lb. |
| * | * * * * | * * |
| 706 | Meats, prepared or preserved, not specially provided for (except beef packed in air-tight containers and pickled or cured beef or veal) | 3¢ per lb., but not less than 10% ad val. |

At the opening of the trial, counsel for the plaintiffs stated that the protests were abandoned as to any merchandise as to which the invoice or the appraiser's advisory classification indicated that it contained salt; that no claim was being made as to any merchandise containing salt.

Counsel for the plaintiffs stated further that the evidence would show that some of the items involved herein were identical with those before the court in *C. J. Tower & Sons et al.* v. *United States*, 30 Cust. Ct. 235, C. D. 1526, and that all of the merchandise was similar

[1] The various items are identified in the record as follows: From Canada Packers, Ltd.: Bull meat or bull beef, outsides, ham outsides, beef ham outsides, outside ham sets, ham sets outsides, outside, knuckles, knuckle, insides, inside, boneless beef, cow meat, boneless meat, rolls, regular rolls, regular beef rolls, strip loins, butts, chucks, chuck beef, cuts, hips, shoulder clods, clods, shank meat, shank beef, briskets, brisket, brisket points, tenderloins, tenders, rolled cow ribs, beef flanks. From Swift Canadian Co., Ltd.: Bull meat, trimmings, clods, shoulders, chucks, chuck, shank, shank meat, shank meat beef, insides, outside, knuckles, butts, rolls, cow meat, cuts, beef, tenders, tenderloins.

in every material respect. At the close of plaintiffs' proof, the record in that case was incorporated herein. The merchandise there consisted of frozen boneless cow meat, frozen boneless beef knuckles, and frozen boneless tenderloins, whereas the entries before us cover fresh and frozen boneless cow meat, bull meat, and various cuts thereof.

According to the evidence in *C. J. Tower & Sons et al.* v. *United States, supra,* the merchandise there was produced as follows:

\* \* \* After the cow is slaughtered, the head and feet are removed, and the hide is taken off. The viscera, kidneys, blood clots, and internal fats, including suet, are also removed. The carcass is then split into two sides, trimmed free of bruises, washed, scaled, and chilled. All grades of cattle are treated the same way up to this point. The better grades are then divided into commercial cuts, with the bones left in, whereas cutter and canner grades are quartered, and the bones and the neck or back strap, but not the sinews or tendons, are removed. The boneless beef is packed in containers of approximately 100 pounds per container, each box holding approximately a forequarter or a hindquarter. The containers are closed, strapped, and placed in a freezer until frozen solid. No salt or any other foreign substance is added.

Beef tenderloin is produced by separating out the meat which lies along the backbone on the inside of the hindquarter. It has no bone in it whatsoever. The knuckle is produced from the hip and is a round, solid piece of meat that lies between two other cuts known as the inside and the outside ham sets.

The proof showed that such merchandise was used as roasting meat, corned beef, stewed meat, chopped meat, boiling beef, steak, hamburger, and filet mignon. It was also utilized by processors for making smoked or dried beef, corned beef, hamburger, bologna, sausage, and canned meat products. In the course of its decision, the court pointed out that an *eo nomine* statutory designation of an article, without limitation or shown contrary legislative intent, judicial decision, or administrative practice, and without proof of commercial designation, includes all forms of the article so long as it is identifiable as such. The court held, therefore, that the merchandise before it was still frozen beef, although the bones had been removed; that it had not been so far advanced as to be converted into a new article, nor had it acquired a new name nor been adapted to a particular purpose. It was not meat, prepared, since it had not been subject to any process of comminuting, drying, curing, smoking, cooking, seasoning, or flavoring, nor had any foreign substance been added. It was held dutiable under paragraph 701, as modified, as frozen beef.

The merchandise in the instant case was produced by Canada Packers, Ltd., and Swift Canadian Co., Ltd. The methods of production were described by Allan H. Innes, superintendent of the Montreal plant of Canada Packers, Ltd.; Christian Thorsen, assistant to the general superintendent of that company; Robert E. Swan,

an employee at the head office of Swift Canadian Co., Ltd.; and Einer Gacobsen Morck, superintendent of the Edmonton plant of that firm.

The witnesses Innes and Thorsen stated that boneless bull meat, boneless cow meat, and the various cuts thereof are produced in all the plants of Canada Packers, Ltd., except the St. Boniface or Winnipeg plant, in the same manner as the merchandise in the incorporated case. However, they said that while boneless cow meat is sometimes shipped as carcass beef (in quarters) and sometimes as individual cuts, no boneless bull beef cuts are made except for the tenderloin. Mr. Innes stated that in preparing cuts the animals are boned in one fashion, but in preparing boneless cow meat or boneless bull meat, they are processed slightly differently. No sinews or tendons except the backstrap are removed. The only difference between frozen and fresh boneless beef is in the freezing.

In the St. Boniface or Winnipeg plant of Canada Packers, Ltd., according to Mr. Thorsen, boneless cow and bull beef is produced by first breaking down the quarters into primal cuts and then boning the cuts and removing the backstrap. No other sinews or tendons are removed.

According to the witnesses Swan and Morck, the latter method is followed in the plants of Swift Canadian Co., Ltd., except that not as many primal cuts are made. The hindquarter is put through the bandsaw once, removing or separating the round and the loin, and the forequarter is put through twice, separating the plate, rib, chuck, and shank. The cuts are then boned. No sinews or tendons aside from the backstrap are removed. Bull meat is not exported in the form of cuts, except the tenderloin, but cow meat is shipped as carcass beef and as individual cuts.

Both witnesses testified that they had heard of the term "bologna bull" and that it meant a lean, firm, dry bull, that is, one that had no excess fat and was firm and solid in structure, not watery or soft. The term refers to live animals only. They explained that some of the bull meat exported by the producers herein came from bologna bulls, but some came from bulls which were either of a poorer or a better grade.

Witnesses Swan and Morck also testified that the description in entry No. 4406 (protest No. 167801-K), covering merchandise from Swift Canadian's Edmonton plant, "338 boxes of frozen E. C. bull meat, boneless beef, gristle, sinew, cords and fat removed," was erroneous, since no boneless beef with the gristle, sinews, and cords taken out was ever produced at the said plant.

A number of witnesses testified in regard to the uses of merchandise of the type involved herein. Plaintiffs' witnesses, three of whom had

testified in the incorporated case, were James J. O'Reilly, sales manager of the canner, cutter, and bull boning department of Armour & Co.; William F. Spoon, now connected with Canada Packers, Inc., a subsidiary of Canada Packers, Ltd., and formerly with the American Stores Co., a retail food chain; John H. Robinson, an employee of the contract sales department of Swift & Co.; and James Hunt Conroy, assistant branch manager and meat merchandiser of Armour & Co.'s Brooklyn branch. Defendant called several witnesses whose firms were engaged in the manufacture of sausage, bologna, canned meats, and frankfurters: Edwin E. Schwitzke, secretary of Trunz, Inc.; Christien Niss, superintendent of manufacturing of Kollner's Inc.; Edward E. Hisgen, assistant superintendent of production of Stahl-Meyer, Inc.; Irving Feinberg, assistant foreman of Hygrade Food Products Corp.; George D. Kearns, sales manager of the Jamaica plant of Armour & Co.; and Albert C. Nagel, president of Hugo Nagel, Inc.

The witnesses who testified in the previous case stated that the uses of boneless cow and bull beef products are generally the same as those given in that case, except that the uses of boneless bull meat are more limited, a higher percentage being used in the manufacture of sausage. According to these witnesses, boneless bull beef is commonly used for making sausage, hamburger, canned meats, and bologna products. Bull tenderloins are sold for filet mignon.

Mr. O'Reilly stated that 65 per centum of the boneless bull meat which his firm (Armour & Co.) produces is used by processors who make bologna, salami, frankfurters, sausage, and canned meats, and the balance is sold in retail and wholesale channels, where a large portion is used for the manufacture of hamburgers. Several of the witnesses knew of bull meat being sold over retail counters for use as roasts, stew, boiling beef, and steak, mainly in certain sections of New York City which have a high population of Puerto Ricans. Some of defendant's witnesses, on the other hand, stated that they had never heard of bull meat being sold for such purposes and that it could not normally be so used.

There is evidence in this case, as there was in the incorporated case, that the terms "fresh beef" and "frozen beef" include both bone-in and boneless beef and both cow beef and bull beef. Plaintiffs' witnesses stated also that the merchandise herein was not "prepared meat" within the definition of the United States Department of Agriculture referred to in the previous case:

Prepared meat is the product obtained by subjecting meat to a process of comminuting, of drying, of curing, of smoking, of cooking, of seasoning, or of flavoring, or to any combination of such processes.

There was evidence that much, but not all, boneless bull meat comes from so-called bologna bulls, but that such meat is bought and sold as bull meat, boneless bull meat, or boneless bull beef. The Government's witnesses, who are engaged in processing meat, testified that the boneless beef they purchase is raw meat, with the bones removed, which they then prepare in various ways. They stated, as did some of plaintiffs' witnesses, that boning the meat is an essential step in preparing it for use in making sausage or hamburger, but that slaughtering, splitting, hiding, and quartering are also essential steps. All of the witnesses agreed that in the process of preparing products, such as hamburger and sausage, the tendons, sinews, excess fat, and other objectionable material have to be removed from the meat, after which it must be cut into small pieces and ground.

It is clear from the record that the predominant use of boneless bull beef is in the manufacture of sausage, bologna products, and hamburger, bull meat being particularly suitable for such use because it is lean and gelatinous and has a binding quality.

Plaintiffs claim that the record establishes that the merchandise herein is in all material respects identical with that involved in *C. J. Tower & Sons et al.* v. *United States, supra,* and that it is, therefore, classifiable as fresh or frozen beef under paragraph 701 of the Tariff Act of 1930, as modified. The Government contends, on the other hand, that boneless bull beef should be classified as prepared meat, on the ground that it has a new name, bologna bull meat, is dedicated to a particular use, the manufacture of sausage and bologna products, and has been advanced toward that use by mechanized means, that is, the bandsaw, and through necessary and essential boning.

The Government also claims that the merchandise, or part of it, has been preserved by salt beyond transportation needs and is, therefore, dutiable as preserved meat. In support of this position, the Government's brief refers to documents entitled "Declaration of Shipper of Food, Drug, and Cosmetic Products," executed by Swift Canadian Co., Ltd., in connection with entry Nos. 1887, 2525, and 3619 (protest No. 167801–K) and states that they reveal that salt, at least, was used as a preservative in the manufacture of the items covered thereby. These documents are not in evidence, and their mere presence in the official file is not proof of the statements contained therein. *United States* v. *Western Electric Company,* 26 Cust. Ct. 531, Reap. Dec. 7954, and cases cited. On the contrary, the evidence as to the merchandise presently before us indicates that no salt or any other foreign substance has been added. In view of the statement of plaintiffs' counsel at the opening of the trial, it is our understanding that no merchandise containing salt is involved herein.

Neither the invoices nor the appraiser's advisory classification in the three entries referred to in the Government's brief contain any reference to salt.

According to the record presented, the only difference between the merchandise in the incorporated case and that involved herein is that boneless bull meat is usually sold in quarters and not in individual cuts, except the tenderloin, and its use is more limited. It is utilized primarily in the manufacture of sausage, bologna products, and hamburger, but there is some use for other purposes. There is evidence that the term "bologna bull" is known in the trade, but the proof does not establish that boneless bull meat is called "bologna bull meat." Some of the witnesses said that the term "bologna bull" is used only in reference to a live animal and that the meat is known only as bull meat or beef. There is also evidence that not all boneless bull meat comes from "bologna bulls." It cannot be said, therefore, that the boneless bull meat before us has acquired a new name.

Nor do we think it has been advanced in condition so as to be dedicated to a particular use. As was stated by a number of witnesses, it is still raw beef, even though the bones have been removed. It is not dedicated to the making of sausage, but is used in hamburger, in various processed meat products, and to some extent for steak, roasts, stews, and boiling beef.

In *C. J. Tower & Sons* v. *United States*, 18 C. C. P. A. (Customs) 152, T. D. 44362, boneless bull meat had been cut into pieces, packed and frozen to form a cake of meat, known as bologna bull meat, and used for no other purpose than the making of sausage. The court held that it was classifiable as prepared meat, stating that it had been changed in form and advanced toward sausage "by having all sinews, fat, kidneys, tendons, and bones removed by skilled workmen, and then cut into parts which are evidently conveniently shaped and sized to be packed in boxes which form a cake of meat, when frozen, weighing about 100 pounds." The merchandise before us has not been so far advanced, but is still beef, fresh or frozen. It has not acquired a new name nor been adapted to a particular use. It is utilized in all the ways that bull meat, bone-in or boneless, is used.

In view of our decision in *C. J. Tower & Sons et al.* v. *United States, supra*, and the record herein, we hold that the merchandise, fresh or frozen boneless cow beef, bull beef, and various cuts thereof, except items containing added salt, is properly dutiable at 3 cents per pound under paragraph 701 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as beef, fresh or frozen.

To that extent, the protests are sustained. As to all other items and in all other respects, the protests are overruled. Judgment will be rendered accordingly.