UNITED STATES v. J. H. BROWN, BROWN, ALCANTAR & BROWN, INC. (No. 4925) [1]

United States Court of Customs and Patent Appeals, June 18, 1958 [2]

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*William J. Vitale*, trial attorney, of counsel), for the United States.

*Lawrence & Tuttle* and *Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellees.

[1] C.A.D. 686.
[2] Released October 10, 1958.

Rich, Judge, delivered the opinion of the court:

This appeal is from the decision of the United States Customs Court, Third Division, C. D. 1852, sustaining the importer's protest and holding the merchandise involved to be properly classified as beef, fresh, chilled or frozen, dutiable at three cents per pound under paragraph 701 of the Tariff Act of 1930 as modified by the General Agreement on Tariffs and Trade, T. D. 51802, rather than as meats, prepared or preserved, not specially provided for, dutiable at 3 cents per pound but not less than 10% ad valorem under paragraph 706 of the Act, also as modified. The competing provisions are:

| | |
|---|---|
| 701 Beef and veal, fresh, chilled or frozen_____ | 3¢ per lb. |
| 706 Meats, prepared or preserved, not specially provided for (except beef packed in air-tight containers and pickled or cured beef or veal). | 3¢ per lb. but not less than 10% ad val. |

The merchandise comprises a number of shipments of meat, described in several stipulations entered into by the parties, of which the following is typical:

1. Beef cows or bulls were slaughtered. The hide was taken off and the head, feet, viscera, blood clots, intestine, some fat, suet and brusies were removed.
2. The meat was then chilled and quartered, and was cut into individual cuts such as butts, rounds, chucks, rolls, clods, strip loins, strips, and shank meat, etc., and at this point the bones had not been removed. The cow and bull meat was also cut into halves, front quarters and hind quarters, and the backstrap and neck cord, consisting of sinew, tendon or ligament, were removed.
3. Thereafter, the bones and kidney were removed from the cuts described above, and from all of the meat, and the protruding end of the shank cord or tendon was trimmed off. Also, in addition to the cuts referred to in paragraph 2, beef trimmings were obtained, or in some instances the halves or quarters were deboned without recovery of the individual cuts listed above.
4. This meat, which consisted of individual cuts referred to in paragraph 2, of trimmings and of boneless carcass meat, was then shipped to the United States, where it was imported in either a fresh, chilled or frozen condition.

As submitted to the Customs Court the case also included certain "diced or cut stew meat," ready for use in canning or to make soups or stews, which was held by that court to be classifiable as meats, prepared, under paragraph 706. No appeal was taken from that holding and accordingly it is not involved here. The other "cuts" referred to in the above stipulation and others like it were wholesale, not retail, cuts of meat.

While the Customs Court, relying on a statement in the collector's report on the protest, said that the collector had classified the mer-

chandise here involved as "meats fresh, chilled or frozen, not specially provided for" under paragraph 706 of the Tariff Act of 1930, it is agreed by both parties here that the collector's actual classification was meats, prepared, not specially provided for, under that paragraph.

The sole issue to be determined is whether the meat, as imported, is to be considered "prepared" within the meaning of paragraph 706. The Customs Court was of the opinion that it was not and that the proper classification was as beef, fresh, chilled or frozen under paragraph 701. In reaching that conclusion the court relied on its own earlier decisions in *C. J. Tower & Sons et al.* v. *United States*, 30 Cust. Ct. 235, C. D. 1526, and *Swift & Company et al.* v. *United States*, 33 Cust. Ct. 212, C. D. 1655. The records in those cases have been incorporated in the record here.

This court and its predecessor have in numerous cases given consideration to the meaning of "prepared" as applied to various products named in tariff acts. We shall briefly review those cases which appear to us to be pertinent.

In *Stein, Hirsch & Co.* v. *United States*, 6 Ct. Cust. Appls. 154, T. D. 35397, potato flour, invoiced as "kartoffelwalzmehl" (potato ground meal) was held to have been specifically within the contemplation of Congress in enacting, in the Tariff Act of 1913, a provision for "potatoes dried, dessicated, or otherwise prepared." It appears from the opinion that prior to 1913 there was no such provision and that by a long line of decisions of the Board of General Appraisers under the 1909 act this product, made by slicing, drying and grinding potatoes, had been held *not* to be "vegetables, prepared in any way," sustaining a number of protests to such classification on the ground potato flour was a manufacture. The court held that the then new 1913 provision quoted above was intended to cover the product.

*United States* v. *Brown & Co. et al.*, 10 Ct. Cust. Appls. 47, T. D. 38295: Fish sounds, cut in half, washed and dried in the sun were assessed as "prepared fish sounds." The Board of General Appraisers sustained the protest that they were free of duty as "fish sounds, crude, dried, or salted for preservation only, and unmanufactured" and the court affirmed. In doing so it said,

Nor is splitting for the purpose of drying or cleaning such a process as ordinarily carries the merchandise into the category of "prepared", as that term is frequently used in tariff nomenclature.

It referred to the case of *A. Zanmati & Co.* v. *United States*, 153 Fed. 880, where mushrooms, cleaned, sliced and dried in the sun, were held to be classifiable as "vegetables in their natural state" rather than "vegetables prepared or preserved" because, as the board had

found, the mushrooms had "not been subjected to any process whereby their condition is changed or advanced from a state of nature."

In the later case of *United States* v. *Brown and Co.*, 13 Ct. Cust. Appls. 3, T. D. 40846, on the same dried fish sounds, after an amendment to the tariff act making cleaned or split fish sounds dutiable, the court nevertheless reiterated its opinion that cleaning and drying were not processes of preparation and said,

> The court is well aware of the uniform holdings in customs cases as to the meaning to be attached to the word "prepared", and does not desire to be understood as departing from such holdings except as to the particular subject matter passed upon in this case.

*United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T. D. 40783, involved frozen lamb described thus: "after the lamb is killed in the Argentine, and as soon as the animal heat leaves the carcass it is frozen and kept at a zero temperature while in the Argentine and during transportation to the United States." It was assessed as "fresh lamb," there being no *eo nomine* provision in the act of 1922 for frozen meats, and was claimed to be dutiable as "meats, prepared or preserved." The board held it was both prepared and preserved and the court reversed both holdings, finding that, although it was not fresh lamb, it was dutiable as "fresh lamb" by similitude. It is interesting to note that in holding it was not "preserved," the court cited a definition to the effect that the term means to keep from decay or from physical or chemical change, noted the concession that freezing does all of those things and then said, "but not all meats that are prevented from decomposing are preserved within the meaning of that term." The discussion then continued:

> This court, and other courts, have frequently held that articles of importation, referred to in the tariff statutes as preserved, have had something more done to them to preserve them than merely to arrest change and decomposition. * * *
> "Prepared, or preserved," as used in tariff acts ordinarily involves cooking, salting, drying, smoking, curing, or the application of some method or process whereby the fresh or natural condition of the article is so changed as to be more or less a permanent preservation. * * * When used in the tariff sense, the word "prepared" is *sometimes* used synonymously with preserved, but, *in a general sense*, it implies that the fresh or raw material has undergone certain mechanical changes, such as cutting, slicing, grinding, mashing, mixing, etc., and *usually* implies that it has been advanced toward the condition in which it is used, and *frequently* such preparation either aids or accomplishes preservation. [Emphasis ours.]

As we read the foregoing, with its hesitancy, qualifications, tentativeness and hedging expressions, it is anything but a "definition" of the meaning of "prepared," as alleged by the Government, or a determination of what that word means as applied to boneless beef. All the court actually decided was that whole frozen lamb carcasses were neither prepared nor preserved.

In *United States* v. *Makaroff*, 14 Ct. Cust. Appls. 304, T. D. 41912, fresh caviar, imported in tins not hermetically sealed, which had been washed in slightly salted water was held to be "prepared caviar." The evidence was that the reason for using salt water for washing was that it gave the sturgeon eggs rigidity or hardened them. The collector classified the merchandise as prepared caviar and the court said that the evidence at least tended to sustain that classification, which was presumptively correct, whether or not it was sufficient to prove affirmatively that the caviar was prepared. The court found that at least the caviar had been subjected to *a process of preparation*. Because of reliance on the presumption, the decision can scarcely be regarded as a definite ruling on the meaning of prepared. The same issue was retried with additional testimony in *United States* v. *W. S. Makaroff et al.*, 16 Ct. Cust. Appls. 531, T. D. 43263, some of the original witnesses apparently contradicting their prior testimony that the salted water was used for hardening as distinguished from cleansing, since the court had not regarded mere cleansing as preparation. (See, for example, the first *Makaroff* opinion and cases there cited at page 308 and the opinion under discussion at page 538.) On the augmented record, the court made the following findings of fact:

In the record now before us, it appears that the eggs are immersed in a solution containing a much higher percentage of salt, and that they are sometimes prepared by the addition of dry salt. It further appears that the caviar thus prepared always has a slightly salty flavor. Obviously, then, to some degree the salt must permeate the eggs. *They are hardened, flavored, and, to some extent, preserved.* This conclusion is reached from the testimony of the witnesses for the importers.

When the testimony of the witnesses for the Government is considered, it clearly appears that the *purpose* of using salt, dry or in solution, is to cleanse, *flavor and harden* the eggs, and, to some degree, *preserve* them. But whatever the purpose, the result is the same. *The eggs are hardened; they are flavored; they are prepared or preserved* "by the addition of salt in any amount"; and, accordingly, they are dutiable under paragraph 721, *supra*. [Emphasis ours except "purpose" and "supra".]

On the basis of these findings the decision of the Customs Court that the eggs were merely cleansed was reversed. We cannot find here a clear-cut ruling on whether the caviar was "prepared" because nowhere in the opinion, or in the recital of the assessment, is that term separated from the phrase "prepared or preserved," the term used in paragraph 721.

In *Stone & Downer Co.* v. *United States*, 17 CCPA 34, T. D. 43323, the statute involved was paragraph 741 of the Tariff Act of 1922, reading:

Par. 741. Dates, fresh or dried, 1 cent per pound; prepared or preserved in any manner, 35 per centum ad valorem.

The imports were dates from which the pits had been removed by hand. There was no evidence that the dates were dried. The evidence showed that they were not preserved in any manner. The Customs Court held, the appellate court's opinion says, "that the dates were advanced in condition by the removal of the pits, and were, therefore, 'prepared'." In affirming, it said further, "We conclude * * * that the dates have been 'prepared * * * in any manner,' and that they are dutiable as assessed by the collector." In support of this conclusion the court said that the dates were imported to be sold for grinding purposes, that generally grinding is a process of preparation, cited the potato flour case, found that it was conceded that the pitting process made the dates more valuable for their ultimate use in grinding, and said that if the pitting advanced them "in value and condition for their ultimate use, they are 'prepared in any manner'."

Two differences, at least, may be noted between the instant case and the pitted date case. First, the statute said "prepared or preserved *in any manner*." The Court of Customs Appeals in an earlier case had called attention to the fact that a similar expression, "poultry, prepared in any manner," is broader than "poultry, prepared" and is a "very comprehensive" expression. *United States* v. *Weber*, 6 Ct. Cust. Appls. 234, T. D. 35469. Second, regardless of condition, the goods provided for were specifically dates, whereas here we have competing sections for "beef" on the one hand and "meats" generically, n. s. p. f., on the other.

We come, finally, to the case principally relied on by the Government, *C. J. Tower & Sons* v. *United States*, 18 CCPA 152, T. D. 44362. That case was decided under the Tariff Act of 1922 and the competing provisions were "fresh beef" versus "Meats, * * * prepared," there being no provision for frozen meats. (In the instant case they are "Beef, * * * fresh, chilled or frozen" versus "Meats, prepared." Both here and in the *Tower* case the "Meats" provision has a "not specially provided for" clause annexed to it.) The merchandise was boneless beef, described as follows:

The merchandise here, after butchering, has been changed in form and *advanced toward sausage* by having *all* sinews, fat, kidneys, tendons, and bones removed by skilled workmen, and then cut into parts which are evidently conveniently shaped and sized to be packed in boxes which form a cake of meat, when frozen, weighing about 100 pounds. Before going to the freezing room, after it is cut and treated as above indicated, 100 pounds of the same is covered with cheesecloth and burlap. After freezing, and before shipment, the box is broken down and removed from the frozen cake.

It is impossible to escape the conclusion that the treatment of this meat is a process of preparation for its eventual use as sausage. *The testimony is positive that it is used for no other purpose and is known as bologna bull meat.* [Emphasis ours.]

The court first concluded that this meat was not "fresh beef," citing the *Conkey* case, wherein it had concluded that frozen lamb was not fresh lamb (though it there classified the lamb as fresh lamb by similitude). The court then postulated the next question as being "whether the merchandise is dutiable under any of the provisions in paragraph 706, which provides for three kinds of meat, 'fresh, prepared or preserved, not specially provided for.'" It then held, on authority of the *Conkey* case that it was not preserved. It next quoted what the *Conkey* case had said specifically about "prepared," quoted *supra*, and pointed out that there the frozen lamb "had not been prepared because it was in the carcass and *had not been advanced in any way.*" (This cannot be taken, of course, as an implication that if it had been "advanced in any way" it would have been held to be "prepared.") It then quoted at length from the pitted date case, discussed *supra*, and proceeded to the detailed description of the merchandise which we have already quoted in full, concluding, with no further explanation, that the protest, which contended that the 100 pound blocks of fully boned, desinewed, cloth-wrapped frozen "bologna bull meat" dedicated to sausage making was prepared meat, should be sustained.

We point out that while the court said of the pitted date case "We think this reasoning applies aptly to the facts at bar," referring, we believe, to statements in the passages quoted about advancement in condition and value, it showed no sign of recognizing the important difference between the date case provision "prepared or preserved *in any manner*" and the provision "Meats, * * * prepared," a difference which had been held to be significant in the *Weber* case, *supra*.

While we do not disagree with the conclusion reached in the *Tower* case, on the facts of that case and the wording of the statutes there involved, we are here dealing with a different statute and different facts and, as usual, we must try to determine the intent of Congress evidenced by the statute now in force and apply it to the whole situation. It is clear to us that the *Tower* case is no more controlling than many of the others discussed above. No case we have read undertakes to *define* "prepared." Indeed, it would be folly to do so for it is not our function to rewrite the words Congress puts into the statutes. Our function is to apply the law to specific facts, with as much consistency as possible, carrying out what seems to be the intent of a legislature which cannot foresee every possible situation.

There is a very definite distinction to be made between preparation, or process of preparation, and the term "prepared." Of course every "prepared" product got that way by a process of preparation, but *processes* of preparation applied to a product do not necessarily result in that product being "prepared" for tariff purposes. The Govern-

ment makes the contention, which we find wholly unacceptable, that the instant meat "need only be partly prepared" to be taken out of the beef paragraph and put into the prepared meats paragraph. We have considered the cases cited in this court in support of the government's contention, involving the term "bleached," *Armand Schwab & Co., Inc.* v. *United States*, 32 CCPA 129, and "decorated *in any manner*" (the emphasized words were ignored), *United States* v. *N. M. Albert Co., et al.*, 41 CCPA 191, but do not find them persuasive here in construing "meats, prepared." If one sets out to make prepared meat and never completes the job, prepared meat does not result. We readily grant the truth of the Government's other contention "that *anything* done to beef to advance it towards its ultimate use is a preparation," but this decides nothing. Everything done to the body of the animal from the time it is killed on is "a preparation" for something and certainly "Beef, * * * fresh, chilled or frozen" does not refer to live animals. A certain amount of preparation necessarily goes into the production of any kind of "beef." Clearly not all beef is "prepared" meat, under paragraph 706, or there would be no need for the beef provision, yet all beef has been advanced in condition and value by some preparation. Where does the transition from beef to prepared meat take place? Has it taken place here? More light than is shed by the opinions in any of the cases we have reviewed is required to answer these questions with any degree of intellectual satisfaction.

The dictionaries are of no assistance. A very few "prepared" products are mentioned, such as self-rising flour, and it would not be safe to make analogies. More real intelligence as to what is meant by prepared meats is conveyed to us by a pamphlet of the Department of Agriculture than by any other source of information. This was put in evidence in each of the incorporated cases and is quoted in the Customs Court opinion in each as saying,

Prepared meat is the product obtained by subjecting meat to a process of comminuting, of drying, of curing, of smoking, of cooking, of seasoning, or of flavoring, or to any combination of such processes.

While this definition is not binding on us, it can certainly be taken as a piece of unprejudiced evidence. In the opinion in the incorporated case, C. D. 1526, after quoting the above, the Customs Court said:

In the instant case, all of the witnesses, experienced men in the meat industry, agreed with the definition and also expressed their own opinions that the instant merchandise is not prepared because it has not been subjected to any of the above-mentioned processes nor has any foreign substance been added.

Similar statements appear in the opinion in C. D. 1655. The above definition is consonant with what we have seen in reading the cases,

in particular with what the *Conkey* case said was involved in the term "Prepared or preserved," above quoted, and with the following from the Summary of Tariff Information, 1929, page 1029:

#### Beef and Veal

Description and uses.—The fresh carcasses, in addition to cuts for household, hotel, restaurant, and club uses, supply raw materials for *pickled, cured and other prepared meats*, for sausage, canned beef, and meat extracts. [Emphasis ours.]

Clearly the term "prepared" is here equated with "pickled" and "cured."

The same Summary, on page 1046 in discussing the commodities of paragraph 706, 1922 Act, which included prepared meats, refers, in reporting the principal imports thereunder to canned meats generally, canned beef, canned rabbit meat, frozen rabbits, dried beef, bologna and other sausage. There is no mention of any kind of fresh beef. On the other hand, and we deem this most significant, on page 1030, under paragraph 701, where fresh beef is found, it says:

*Imports.*—Imports of fresh (chilled and frozen) beef and veal have been relatively small since 1915, but show a large increase during 1928. They come mainly from Canada, *with increasing receipts of boned beef* from New Zealand during 1928. [Emphasis ours.]

This summary was prepared specifically to enable Congress to revise the Tariff Act of 1922, which it did in writing the Act of 1930, here involved. With presumptive knowledge that boned beef was deemed to be within the term "fresh beef and veal," the only change made was to revise the wording to "beef and veal, fresh, chilled or frozen." We can only infer that the intent was to include boned beef in this paragraph. With this contention of the importer we feel constrained to agree. While the government's brief refers to pages 1029–1030 of the Summary, it fails to answer this precise point. Perhaps this is because, as it seems to us, it is unanswerable.

After the most careful review it is, therefore, our opinion that beef is still beef even when boned and that the imports are clearly within paragraph 701; that all the indications are that Congress intended merchandise like that here involved to be assessed with duty under that paragraph; that the merchandise is not within the intent of the term "Meats, prepared or preserved" of paragraph 706; and that the decision of the Customs Court must be *affirmed*.

O'CONNELL, J., was not present at the argument of this appeal, but, by agreement of counsel, did participate in the decision.

JOHNSON, Chief Judge, Dissenting.

I am constrained to disagree with the decision reached by the majority.

The majority opinion, in effect, reaches two conclusions: (1) that the meat involved in the instant case is still beef in a tariff sense, notwithstanding the treatment which it has undergone; and (2) that the here involved meat is not "prepared." On the second point, the majority cites with apparent approval the Department of Agriculture definition of "prepared meat."

It should be noted, in connection with the second point, that in *C. J. Tower & Sons* v. *United States*, 18 CCPA 152, T. D. 44362, cited in the majority opinion, this court concluded that the meat there involved was "prepared meat" notwithstanding the fact that none of the processes or steps set forth in the Department of Agriculture definition had been used on said meat.

Furthermore, there is serious question in my mind that the line of demarcation as to what is "prepared" and "not prepared" was properly drawn by the majority between the meat involved in this appeal and the "diced or cut stew meat" which the importers have tacitly admitted is prepared. The line of decision would appear to be nothing less than arbitrary.

Notwithstanding the foregoing, I am of the opinion that the decision below should be reversed, regardless of whether the instant merchandise is, in fact, "prepared" in the sense in which that term is used in paragraph 706 of the Act of 1930.

In the instant case, the merchandise was classified by the collector under the provisions of paragraph 706 of the Act of 1930 as "meats, prepared or preserved * * *." Under well settled law, if the importer in this case is to prevail, he has to satisfy a double burden of proof: he not only must show that the collector was wrong but he must prove the correct classification as well. *United States* v. *Danker & Marston*, 2 Ct. Cust. Appls. 462, T. D. 32208; *Benrus Watch Co.* v. *United States*, 21 CCPA 139, T. D. 46467. Thus, unless the instant merchandise is dutiable under paragraph 701 as "beef * * * fresh, chilled or frozen," we must uphold the collector's classification, be it correct or incorrect.

I do not dispute the fact that as between the involved provisions of paragraph 701 and 706, the former is more specific. Numerous cases decided by this court and its predecessor in customs jurisdiction leave no doubt but that this is correct. *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T. D. 47464; *Mawer Co.* v. *United States*, 7 Ct. Cust. Appls. 493, T. D. 37108; *Crosse & Blackwell Co.* v. *United States*, 36 CCPA 33, C. A. D. 393; *Brown & Co.* v. *United States*, 6 Ct. Cust. Appls. 415, T. D. 35977.

The question which must be answered, however, is not whether "beef * * * fresh, chilled or frozen" is more specific than "meats * * * prepared," but whether or not the instant merchandise is *beef* for tariff purposes. For as aforesaid, if the merchandise is not dutiable under paragraph 701, the collector's classification must be sustained.

In the *Nootka Packing* case, *supra*, this court stated:

* * * an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, *and without proof of commercial designation*, will include all forms of said article. * * * [Emphasis added.]

While it cannot be disputed that "beef" is an *eo nomine* designation, I am of the opinion that the Government has proved commercial designation of that term, which designation excludes the here involved merchandise.

Four witnesses testified on behalf of the Government in the instant case. Three of these witnesses stated categorically that, based on their experience, the term "beef" had a definite, uniform and general meaning in the United States at, prior to and subsequent to June 17, 1930, the effective date of the Tariff Act of 1930. As designated, the term included only carcass beef and the various cuts thereof with the bone *naturally* in or with the bone *naturally* out. This testimony stands uncontradicted. It was not weakened, despite persistent cross-examination. In light of these facts, I am of the opinion that it is sufficient to establish commercial designation of the term "beef."

Since there is no question but that the instant merchandise has been so processed that it no longer satisfies the aforestated designation of "beef," it follows that the instant merchandise cannot properly be dutiable under paragraph 701. The importer having failed to carry his double burden of proof, the collector's classification should stand.